## STATE *v.* WARREN BARNETT.

[54 South. 313.]

GRAND JURY. *Indictment. Motion to quash.*

> An indictment for obtaining money under false pretences should be quashed where it was obtained by the attorney of the person alleged to have been defrauded, appearing before the grand jury and drawing the indictment and the district attorney though obtainable had no hand in the indictment.

APPEAL from the circuit court of Lauderdale county.

HON. JNO. L. BUCKLEY, Judge.

Warren Barnett was indicted for obtaining money under false pretenses. The court below sustained a motion to quash the indictment and the state appeals.

The proof taken upon the motion to quash shows that Barnett had sold some gold mining stock to G. W. Meyer, who afterwards died, and the stock was acquired by his wife; that an effort was made by Mrs. Meyer, through

her attorneys, to get Barnett to take back the stock at the same price he had sold it to Mr. Meyer, which he agreed to do, but failed to fully comply with his agreement. After some correspondence between Barnett and Mrs. Meyer's representatives, who were S. A. Neville, her son-in-law, C. W. Schamber, a former business associate of Mr. Meyer, and a nephew by marriage of Mrs. Meyer, and Geo. B. Neville, her attorney, who was a brother of S. A. Neville, the appellee still failed to pay Mrs. Meyer for the stock. Thereafter the grand jury assembled, and S. A. Neville and C. W. Schamber appeared before the grand jury and made report of the transaction, and suggested to the grand jury to call in Attorney Geo. B. Neville, who could give them a full statement of the facts. Attorney Neville then appeared at their request and presented the matter to the grand jury. He testified that he did not advise or suggest an indictment, but simply stated the facts, and that the grand jury voted to find an indictment, and asked him to prepare it, which he did, after obtaining the permission of the district attorney. The indictment was drawn by Attorney Neville and appears in his handwriting. Members of the grand jury who testified on the motion to quash state positively that they were not influenced in any way by Mr. Neville's presence in the grand jury room, and that the indictment was found on the statement of facts detailed by him. It is clear from the record that Attorney Neville did not procure himself to be summoned by the grand jury, and that he did not urge them to find the indictment, nor do anything tending to influence the finding of same, but simply recited the details of the transaction. It is also shown that Mr. S. A. Neville did not procure himself to be summoned, but that he had been summoned as a witness by the grand jury on another matter, and while there told them of the transaction between Barnett and Mr. Meyer,

*W. W. Venable,* district attorney, for appellant.

In the case of *Durr* v. *The State,* 53 Miss., page 425, the court granted permission for an attorney employed to present and go before the grand jury with the witnesses and there act for the district attorney in framing the indictment.

In the case of *Wilson* v. *State,* 70 Miss., page 595, one J. L. Finley, employed in civil litigation went before the grand jury as a private prosecutor, prepared the indictment and procured the same to be found and presented.

In the case of *Blau* v. *The State,* 82 Miss., page 514, the court in a charge to the grand jury pointed out the person whom he wished indicted, spoke of the law as being plain and clear, stated to the grand jury that they had sufficient evidence before them to indict and expressed surprise that they had not indicted.

In the case of *Fuller* v. *The State,* 85 Miss., page 199, practically the same thing was done by the court as in the Blau case.

In the above cases this court held that the indictments were illegally returned.

In the case of the *State* v. *Bacon,* 77 Miss., page 366, this court held that the presence of a bailiff in the grand jury room during a part of its deliberation was not sufficient grounds to quash the indictment in the absence of a showing that his presence exerted undue influence upon the grand jury in its findings and also held that the presence of an intruder in the grand jury room, urging the finding of the indictment was not sufficient to quash the indictment, when no undue influence was shown. It is seen from these cases that they group themselves roughly, if we are permitted to generalize, into three groups, the Blau case and the Fuller case being instances of official interference with the freedom vouchsafed to the grand jury in their deliberations, and (2) the Durr case and the Wilson case are instances where attorneys, offi-

cers of the court, in the capacity of private prosecutors, appeared in the grand jury room with witnesses and developed the prosecution an avowedly partisan act, and (3) the Bacon case furnishes illustration of a non-officer and interloper attempting to exert his influence to cause the grand jury to indict.

It is noticed that in the Blau and Fuller cases, this court drew inference of undue influence from the action of the trial court. Also in the Durr and Wilson cases the court drew a similar inference from the actions of the private prosecutors and all the facts in evidence, deciding in these cases against the state and quashing the indictment. We find further that in the Bacon case that the court held that the facts in evidence failed to show undue influence and the court announced through Justice Whitfield that "the action of the grand jury must be free from prejudice or passion. But its solemn findings are not to be set out for light or trivial causes or anything short of a sufficient substantial showing."

This, we think, announces the true rule and even though it be considered that while there is influence sought to be exerted by the court or private prosecutor, this court may always draw an inference of undue influence and has thus converted what has heretofore been a conclusion to be drawn from facts, proven, into a presumption of law, yet in cases where the influence is not sought to be exerted by courts or private prosecuting attorneys, presence alone in the grand jury room by a volunteer or interloper will not quash the indictment. Undue influence must be proven as a substantial fact.

*G. Q. Hall, Hall & Jacobson,* for appellee.

A motion was the proper proceedings to raise the question of the validity of the indictment. Mississippi Code 1906, § 1427; *Blau* v. *State,* 82 Miss. 514.

This court has heretofore announced the law in cases in which the facts were similar to the case at bar, and,

in our opinion, the trial judge has correctly followed the decisions in this case and his action was proper. *Wilson v. State,* 70 Miss. 595; *Durr* v. *State,* 53 Miss. 425; *Welch* v. *State,* 68 Miss. 341; *Blau* v. *State,* 82 Miss. 514; *Fuller* v. *State,* 85 Miss. 199; *Green* v. *State,* 53 S. R. 415; *Herrington* v. *State,* 53 So. R. 783, recently decided by this court.

Argued orally by *G. Jacobson,* for appellee.

Anderson, J., delivered the opinion of the court.

The case of *Wilson* v. *State,* 70 Miss. 595, 13 South. 225, 35 Am. St. Rep. 664, is conclusive of the question involved in this case, in favor of the appellee.     *Affirmed.*