SANDERS *v.* STATE.

(In Banc.   June 11, 1945.)

[22 So. (2d) 500.   No. 35867.]

V. H. Torrey, Sr., of Meadville, for appellant.

Greek L. Rice, Attorney General, by Geo. H. Ethridge, for appellee.

**McGehee, J.,** delivered the opinion of the Court.

The appeal here is from a conviction on the charge of murder, and for which crime the appellant was sentenced to suffer the death penalty. The homicide occurred in the upper compartment of the county jail about one week prior to the convening of the grand jury which returned the indictment herein. The victim, who was the only fellow prisoner of the accused, was beaten to death with an iron bar which had been used as a lever to throw the locks and bar the doors of the jail cells. But we deem it unnecessary to make a full statement of all the facts in connection with the killing, for the reason that we do not reach the merits of the case in determining whether

or not this conviction can be permitted to stand under the circumstances hereinafter set forth.

A motion to quash the indictment was timely filed and presented on behalf of the defendant, the main ground thereof being that in the absence of the district attorney, who was detained at home for the first three days of the court term on account of the serious illness of a member of his family due to a recent surgical operation, the circuit judge, when delivering his charge to the grand jury (and presumably in the presence of the petit jurors who were waiting to be empaneled) explained the circumstances of the district attorney's absence and informed the grand jurors that he would perform the duties of such office pending his arrival at court; and it was further stated in the motion that the circuit judge did go into the grand jury room, "question the witnesses, and generally perform the duties of the district attorney until this indictment was returned against the defendant." It is not charged that the judge consciously undertook to improperly influence the grand jurors to indict this defendant, but that what actually transpired had the effect of rendering the indictment void.

Upon the presentation of the motion to quash, the circuit judge dictated into the record the following statement:

"On Sunday afternoon before the court convened, the District Attorney called me by telephone telling me that a member of his family was quite ill, had just had an operation and that his presence with that member of his family would be needed for the next several days and it would be next to impossible for him to be in court Monday, Tuesday and Wednesday. Whereupon, I told him that I would advise the grand jury and would send him notes from which he might draw and sign indictments, and that when the court did convene on Monday morning I made statements to this effect to the grand jury and I did go back in the grand jury room after they had organized; I did run over the docket with them and

did ask them to take this case up early in their session in order that the trial might be expedited, should they indict, it being the only case on the grand jury docket wherein the defendant was confined in the county jail. I was in the grand jury room when the sheriff came in and exhibited to the jury the weapon used in this homicide, and, also, the weapon used in the attempt to break jail after the murder was committed and heard some of the sheriff's testimony. I took particular pains not to express an opinion of my own as to what their presentment should be or what punishment would be warranted under the evidence that they might find. I also took particular pains not to be in the grand jury room when they discussed the evidence put before them or when voting upon any indictments whatsoever."

No further evidence at all germane to the issue raised by the motion to quash the indictment was introduced thereon. Nor was there any formal order taken to show that the same was overruled. But we are of the opinion that the foregoing statement by the circuit judge is sufficient to constitute an adverse ruling on the motion when considered in connection with the fact that the court then immediately proceeded to try the case on its merits under the indictment complained of.

It will be assumed, if at all material, that the attorney was not appointed to represent the accused until after the indictment was found, and that prior thereto no opportunity was afforded to object to the organization of the grand jury on the ground that the district attorney, or a district attorney pro tem. whose appointment is provided for, if not required, under such circumstances by Section 3924, Code 1942, was not present to advise the grand jurors as to the competency and legal sufficiency of any evidence that might be heard by them in support of a charge against him; nor was there a waiver of any other right that the accused may have had in the premises.

However, we shall limit this decision to the main ground upon which the validity of the indictment is challenged—the presence of the circuit judge in the grand jury room on the occasion referred to in his statement hereinbefore quoted.

It is to be conceded in the instant case that the action of the circuit judge was actuated by the best of motives, out of a desire that the district attorney should feel free to remain with his family as long as his presence at home was needed, and without experiencing any anxiety as to whether the work of the court was being seriously impeded by his absence; also that another attorney may not have been readily available to be appointed in his stead; that since the circuit judge resides in the county where this grand jury was being convened he was conversant with the situation as to whether or not there would be but few matters of importance to come before that body for investigation at the ensuing term of court; and that by furnishing the district attorney such data as he might need for the purpose of drawing and signing the indictments at his home, the extra compensation to be paid to a district attorney pro tem, could be saved. In other words, there is nothing in this record to indicate that the judge had any desire or intention whatsoever to influence the grand jurors to return an indictment by reason of his presence in their room, or by what he said to them, which they would not have otherwise returned.

But the foregoing considerations are not a sufficient answer to the question here presented. The right of the citizen to have any complaint against him investigated by the grand jury when no one else is present other than the grand jurors, the witness who is being examined under oath, and the duly authorized prosecuting officer, is fundamental. It is a time-honoring principle that the deliberations of a grand jury must be kept free from outside influences, whether from righteous or unrighteous sources. Its origin and history as a co-ordinate branch of our judicial system, beginning with the struggles of

the early days which arose in England between the powers of the King and the rights of the subject, has ordained and establised it as an institution to serve the dual purpose of forming a barrier against oppression, by the sovereign and affording a means of bringing to trial all persons accused of crime upon just grounds. Without its previous action no person can be put to trial for an infamous crime in this state. In other words, those who are guilty of such crimes can be brought to trial only through the diligence of the grand jury in the exercise of its full freedom of action, and they can escape being rendered subject to prosecution only through its dereliction. But its proper function is not only that of returning indictments in proper cases, but also of protecting the citizen against unwarranted accusations— acting· in both instances upon its own responsibility, unmoved by public clamor and unawed by power. If the grand jury is to serve its rightful purpose as an institution of the people, safe-guarding both the welfare of the public and the rights of the citizen, its deliberations must remain unhampered either by the presence or influence of those in positions of high authority and all others who have no duties in connection with its secret inquests.

The rule is stated in 38 C. J. S., Grand Juries, sec. 40, at page 1039, as follows: ''It is generally held that, in the absence of any imperative necessary therefor, the presence in the grand jury room at any time during the session of the grand jury of any person other than the witness undergoing examination, and the duly authorized prosecuting officer, is improper,'' citing the case State v. Owen, 156 Miss. 487, 126 So. 25, 28, and cases from other jurisdictions. In the Owen case ·our Court said, among other things, that ''if the door of the grand jury room is open to righteous. outside influences, this would be an entering wedge for the admission of corrupt outside influences. If the law and order league is permitted to enter, then sooner or later the league against law and order will find its way in  .  .  .  There is only one safe,

sound rule, and that is to close the door of the grand jury room tight against all outside influences."

The only apparent departure in our own decisions from this concept of the proper administration of our criminal laws is reflected in the case of State v. Bacon, 77 Miss. 366, 27 So. 563, 564, wherein the bailiff of the grand jury was improperly in the grand jury room for a part of the time, and out part of the time, having just passed in and out, during the deliberations upon the indictment against the defendant Bacon, and also where it appears that one I. R. Hegie was present, sworn as a witness, and answered the routine questions propounded to him, when he made some reference to the Bacon case but knew nothing of his own knowledge about it, although he expressed the opinion gratuitously that Bacon ought to be indicted. The Court in that case stated: "The proof clearly shows that the bailiff exerted no influence on the grand jury. . . . The facts as to Hegie's conduct fall far short of showing an exertion of improper influence . . . "

It is well settled, however, that an indictment will be set aside whenever the finding of the grand jury was influenced and the defendant was prejudiced in his substantial rights by the presence of an unauthorized person in the grand jury room, as stated in 28 C. J., p. 805, 38 C. J. S., Grand Juries, sec. 40, p. 1047; and as held by this Court in the case of Durr v. State, 53 Miss. 425; Welch v. State, 68 Miss. 341, 8 So. 673; Wilson v. State, 70 Miss. 595, 13 So. 225, 35 Am. St. Rep. 664; State v. Barnett, 98 Miss. 812, 54 So. 313; Collier v. State, 104 Miss. 602, 61 So. 689, 45 L. R. A. (N. S.) 599; and State v. Owen, 156 Miss. 487, 126 So. 25.

In the case of Welch v. State, supra, Judge Campbell observed that "in vain the constitution protests against being proceeded against criminally, by information, for indictable offenses except in cases mentioned, if grand juries (in returning indictments) are to be swayed by malice or prejudice, or subjected to other influences than those recognized by law as legitimate and proper to guide

them in their secret inquest. . . . It is true that one indicted is to be tried by his peers, and, if falsely accused, may expect a deliverance; but he is entitled to attack the prosecution in limine, where it is procured by means unknown to and unsanctioned by law.'' And in the case of Wilson v. State, supra [70 Miss. 595, 13 So. 226], Judge Cooper, in discussing the functions of the grand jury, stated: ''It is a serious mistake to suppose that the right of one accused or suspected of crime to the orderly and impartial administration of the law begins only after indictment. Immunity from prosecution for indictable offenses, except by presentment by the grand jury, is declared and preserved by the organic law of this and all other states; and though, by reason of the secrecy of the proceedings before that body, its action is seldom brought in review, it cannot be doubted that one whose acts are then the subject of investigation is as much entitled to the just, impartial, and unbiased judgment of that body as he is to that of the petit jury on his final trial, . . . ''

In thus quoting these eminent jurists we reaffirm our former statement herein to the effect that we do not mean to imply that there was any effort to improperly influence the grand jury in the instant case. We are discussing a fundamental question, involving not only the rights of the accused in the case at bar, but those of every person against whom a complaint may be made before a grand jury in the future. They, as well as the public generally, are entitled to have such complaints investigated under the safeguards prescribed by law; otherwise it would be possible for a judge, or other person whose presence before the grand jury is unauthorized, to go before that body and influence it to return, or not to return, an indictment in a case in which such a person may be interested, and to thereby influence its action one way or the other by his mere presence, even though he may remain silent throughout the examination of the witnesses in connection with the complaint then under

investigation. The performance of any of the duties of the prosecuting attorney in the grand jury room by a judge is wholly incompatible with the functions of his office, which require that he hold the scales of justice evenly balanced between the state and the accused, and is contrary to the purpose of our judicial system in the administration of the criminal law.

In the case of State v. Bacon, hereinbefore cited and discussed, several of the grand jurors were permitted to testify as witnesses on the hearing of the motion to quash the indictment, but whether their testimony was given with or without objection, and whether it tended to uphold rather than impeach the indictment, does not appear. But this Court held in the more recent case of Lewis v. State, 132 Miss. 200, 96 So. 169, that grand jurors are incompetent to testify for the purpose of impeaching their indictment on a motion to quash. And in the case of Barnett v. State, hereinbefore cited, some of the grand jurors testified not in the impeachment of, but for the purpose of sustaining the indictment, and said that they were not influenced to any extent by the presence of an unauthorized attorney in the grand jury room when they had the case under consideration, and there was no testimony to the contrary. This Court, however, held that the indictment should have been quashed.

Since the grand jurors were incompetent as witnesses in the case at bar to testify that the return of the indictment was influenced by the presence of the circuit judge in the grand jury room and by his participation in its deliberations to the extent stated by him on the motion to quash, the accused was placed in the attitude of having to make proof of such fact, if it could be made at all, by the trial judge who was passing upon the motion. The occasion should not arise where a defendant will be placed in that attitude, even though the trial judge is willing to disclose with the utmost frankness and candor all that has transpired, as was true in the case here. Nor should it ever be true that a judge in such an instance

should have to pass upon the rectitude of his own conduct or the issue of whether it had unduly influenced the action of the grand jury to the prejudice of the accused. Ordinarily an accused would be unable to prove more than the fact that the judge was present in the room at the time complained of. Moreover, it would be next to the impossible for him to prove that other unauthorized persons went before the body and used improper influence to have him indicted, since such proof would have to be supplied by those guilty of the improper conduct.

However, we are of the opinion that there is a very vital difference between the influence that the mere presence of a circuit judge may have in a grand jury room on the deliberations of that body and the influence of a mere bailiff who is not shown to have said anything to the grand jurors on any subject while passing in and out of the grand jury room. The Bacon case is not an authority on the question here involved because of the other considerations hereinbefore mentioned.

Statutes have been enacted in some jurisdictions making the fact that any person other than the grand jurors was present before the grand jury during the investigation of a charge, except those required or permitted by law, a ground for setting aside an indictment founded thereon. See 28 C. J. 805, and cases cited in the note thereunder; 38 C. J. S., Grand Juries, sec. 40. Such a statute was applied and enforced in the case of State v. Bower, 191 Iowa, 713, 183 N. W. 322, where the circuit judge had violated such a statute. The only other case which has come to our notice, after an exhaustive research, where a circuit judge was present in the grand jury room during an investigation upon which the indictment was returned, when he was not sworn as a witness, is the case of Hall v. State, 134 Ala. 90, 32 So. 750, 757, wherein the Court upheld the indictment where the grand jury had previously refused for the fourth time to vote a true bill, notwithstanding the insistence of the district attorney that an indictment should be returned, and where, at the sug-

gestion of the said prosecuting officer, the presiding judge was invited into the room to give information as to the law of the case, which he proceeded to do, and demonstrated that his influence was greater with the jurors than that of the district attorney. However, in that case the proof offered on the motion to quash was the testimony of two members of the grand jury, and the Supreme Court seems to have based its decision upon the incompetency of such testimony, saying: "Certainly to permit a grand juror to testify that one or more of the jury did not vote for the finding of the bill or indictment, or to matters influencing the action of members of the jury, would be not only a violation of his oath as a grand juror, but would be destructive and subversive of the grand jury as an institution of our judicial system, and destructive of that security of freedom of thought and action, and therefore of that independence, so absolutely essential to the faithful discharge of the duties imposed upon that body, which, if impaired or destroyed, would be fatal to a vigorous administration of the criminal law." At any rate, if what occurred in that case should be disclosed by competent proof in any jurisdiction, a court should not permit a conviction based upon such an indictment to stand.

But in the case now before us the facts as to what occurred were disclosed by the statement from the bench of the presiding judge, and no question is raised as to its competency.

The judgment of the court below is reversed, and the indictment quashed, and the defendant held to await the action of another grand jury.

Reversed.