255 So.2d 916 (1971)
John DAVIS
v.
STATE of Mississippi.
No. 46466.
Supreme Court of Mississippi.
November 29, 1971.
Rehearing Denied January 10, 1972.
Anderson, Banks, Nichols & Leventhal, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Timmie Hancock, Sp. Asst. Atty. Gen., Jackson, for appellee.
*917 SUGG, Justice:
This is the second conviction of the appellant on the charge of rape, the first conviction having been reversed by the United States Supreme Court in Davis v. Mississippi, 394 U.S. 721, 730, 89 S.Ct. 1394, 1399, 22 L.Ed.2d 676, 683 (1969), where the Court stated that the only issue before it was whether fingerprints obtained from the petitioner should have been excluded from the evidence as a product of a detention which was illegal under *918 the Fourth and Fourteenth Amendments to the Constitution of the United States.
A footnote to the dissenting opinion of Mr. Justice Stewart stated:
At the original trial the victim of the rape, under oath, positively identified the petitioner as her assailant. There now exists, therefore, ample probable cause to detain him and take his fingerprints.
After a mandate was issued by the United States Supreme Court, appellant was indicted by the Grand Jury of Lauderdale County, Mississippi in May of 1970. Thereafter, he was lawfully arrested and fingerprints were taken after his arrest for purpose of comparison with fingerprints and a palm print found on the window and the window ledge of the victim's home.
The victim reported the crime immediately after its occurrence and was carried to the hospital where she was examined by Dr. Lowry Rush, Jr., who stated that his examination was made at 8:00 P.M. on December 2, 1965; that she had numerous scratch marks about her face and neck; that he took six smears from her vaginal introitus and had these examined for sperm; that Dr. C.B. Mitchell, a pathologist, examined the smears in the presence of the witness, and the witness, personally, along with Dr. Mitchell, found sperm in five of the six smears.
L.L. Scarborough, a City Detective, was the first officer arriving at the home of the victim and he noticed a screen off the right front window of the home and proceeded to examine the window and window sill for fingerprints. He was joined by L.A. Willoughby, another City Detective, at about 7:00 P.M. and these officers lifted fingerprints from the window and a palm print from the ledge on the inside of the house.
A comparison of the prints found at the home of the victim and the appellant's prints taken on June 2, 1970 after his subsequent indictment was made by William F. Cloud, a fingerprint examiner with the Federal Bureau of Investigation who had twenty-two years experience with the Bureau, and on the basis of this comparison, it was determined that the prints found on the window and window ledge of the victim's home were the appellant's.
The victim made a positive in-court identification of the appellant at the first trial and testified that she knew the appellant because he had worked for her on two occasions and brought a check to her home on another occasion. The victim testified that she saw the face of appellant in the light of a flashlight that was covered by a fascinator (a crocheted head covering) when the light moved across the appellant's face.
The appellant introduced Everett Keller, a juvenile officer for the City of Meridian, Mississippi, who testified that he carried the appellant to the hospital on two occasions and the victim did not identify her assailant on either occasion. He further testified that he carried the appellant to the home of the victim and that appellant did not put his hands on the front window of the victim's house where the prints had been found by the officers on December 2, 1965.
The appellant's defense was an alibi and he introduced his sister, Virdie Bell Davis, who testified that the appellant arrived home before 5:30 on the afternoon of December 2nd; that he remained home for not more than ten minutes and went to a store located about a block from the home to get some cookies; that he was gone on this trip for approximately ten minutes and did not leave home thereafter. Appellant also introduced Bilbo Trussell, a friend, who testified that he was with the appellant on December 2nd; that the appellant told him he was going to work for Buddy Scruggs in the afternoon and that he went to appellant's home about ten minutes before 6:00 P.M. This witness testified that the appellant did not leave the home during his visit which lasted until about 7:30 or 8:00 P.M. and that the appellant was asleep when he arrived.
*919 The appellant testified in his own behalf and stated that he worked for Buddy Scruggs on the afternoon of the crime until "that evening", topping trees; that he was not certain when he quit work; that when he arrived home he worked on his bicycle in the back yard, went to the store for some cookies and then remained in the house for the balance of the night. Appellant also stated that he had worked for the victim about a month and a half or two months before the crime and that he had been in her house on two occasions and at another time found a check that belonged to victim and carried it to her house.
He testified that Everett Keller took him to the home of the victim on December 12th and that he was carried to the home again on December 13th when he put his hands on the windows in the presence of the police.
On cross-examination he stated that he did not know where Buddy Scruggs lived at the time of the trial and when asked where he was cutting trees for him, his answer was "somewhere in the Northwood area".
Appellant assigns as error the following:
1. The court erred in failing to sustain appellant's motion to exclude prior testimony.
2. The court erred in failing to sustain appellant's motion to quash the indictment or grant alternative relief.
3. The court erred in failing to grant appellant's post argument motion for mistrial.
4. The court erred in refusing to exclude prospective jurors challenged by the defense for cause.
5. The court erred in failing to sustain appellant's motions to dismiss for failure of the State to meet its burden of proof.
Appellant contends by his first assignment of error that his motion to exclude the prior recorded testimony of the victim should have been sustained. The first ground of the motion states that the victim was informed by the State that defendant had made a "confession" prior to her "identification" of him as her assailant; said confession was illegally obtained and irredeemably taints the identification in violation of defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. The second ground in the motion was that the defendant was illegally arrested, exhibited to the witness, finger-printed and forced to confess and the identification by the witness is both the fruit of and tainted by these illegal acts in violation of defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.
After hearing testimony on this motion the court overruled the motion with the exception that the statement of the victim to the effect "and he confessed it all" was to be excluded.
The court directed that instead of introducing a transcript of the evidence at the trial someone would be required to assume the role of the victim; that the district attorney and appellant's attorney could read the questions that were propounded at the former trial and the rulings of the judge would likewise be read to the jury. The trial court did not permit the jury to carry a transcript of the testimony into the jury room because the judge did not want any more weight given to her testimony than the testimony of any other witness who testified in the case.
This procedure was followed and the State was permitted to show what the deceased victim had testified on the former trial after ample preliminary proof of her death, identity, accuracy of the record and right of appellant's counsel to cross-examination at the first trial. This is in accord with the rule stated in Lipscomb v. State, *920 76 Miss. 223, 254, 25 So. 158, 165 (1898), where we held:
After the first trial of the accused, and before the one now under review, a material State's witness died. Upon the last trial the State was permitted to prove what the deceased witness had testified on the former trial, after ample preliminary proof of his death, identity, etc. This was not error. While the exact question here presented was not then before the court, the correct rule on the subject was announced in Owens v. State, 63 Miss. 450.
Appellant argues that the testimony of the victim, particularly the in-court identification of appellant by the victim, should have been excluded under the authority of Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963) where the Court stated:
"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt 221 (1959).
Appellant argues that the victim's visual impression was enhanced by certain other factors including (1) her surmise that the assailant must have known where her light switch was by reason of the fact he had been in her home and had a prior opportunity to know the location of the switch; (2) her belief that appellant had previously tampered with her mail; and (3) her knowledge from some source that "he confessed it all." Appellant contends that her identification is the combination of a continuous process of exploitation of original police misconduct.
The record amply reflects that the appellant had worked for the victim, that she saw his face in the light of a flashlight at the time the crime was committed and his fingerprints on the window and palm prints on the window stand as mute evidence of his presence at the victim's home. We hold that the victim's in-court identification was not an exploitation of any illegality but that it was based on credible evidence of an independent origin.
Appellant cites Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968) where on the first trial three unlawful confessions of Harrison were introduced in evidence, and in order to combat these confessions the petitioner took the stand and testified. The case was reversed and on a second trial the confessions were not introduced but his previous testimony was used to impeach him. The Court held that if he testified in the first trial to overcome the confessions, then his testimony was "tainted by the same illegality that rendered the confessions themselves inadmissible" and held that his testimony on the first trial was inadmissible on the retrial for purposes of impeachment.
Appellant argues that the in-court identification fails as a product of an illegally obtained confession. The confession was not introduced in evidence and the record does not show the basis of the victim's information with reference to any confession. The in-court identification made by the victim was properly admitted.
Appellant contends that his constitutional rights were violated when he was carried by a juvenile officer to the hospital room of the victim and cites as authority the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
The constitutional rule established in the three cases was limited in application by Stovall to cases involving confrontation for identification purposes conducted in the absence of counsel after June 12, 1967.
*921 The question remains for decision whether appellant, although not entitled to the application of the Wade and Gilbert cases to his case, is entitled to relief on his claim that the confrontation conducted in his case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.
In Stovall, supra, the Court said:
The practice of showing suspects singly to persons for the purpose of identification, and not a part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative. The Court of Appeals, en banc, stated [United States v. Denno] 355 F.2d at 735,
"Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, `He is not the man' could have resulted in freedom for Stovall. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station line-up, which Stovall now argues he should have had, was out of the question." (388 U.S. at 302, 87 S.Ct. at 1972-1973, 18 L.Ed.2d at 1206).
In the case at bar the victim who was 86 years of age was hospitalized from December 2, 1965 to December 27, 1965 and after being released from the hospital was not able to return to her home to live but resided with one of her children and in a rest home until she died on July 9, 1970. The previous opinions of the U.S. Supreme Court and this Court indicate that many suspects were questioned with reference to the crime and we hold that the police followed a reasonable procedure in taking the appellant to the hospital room of the victim. The usual police station line up was out of the question under the facts of this case.
The Court properly overruled the motion of the appellant to exclude the prior testimony of the victim and we hold that the in-court identification of the appellant was not tainted by any illegal line up procedure but was of an independent origin.
Appellant argues in his second assignment of error that the identification of appellant was illegally obtained and since the only evidence presented to the grand jury connecting appellant with the crime was the testimony of the victim, the court should have sustained the motion to quash the indictment.
At a hearing on the motion to quash the only witness who testified was the district attorney who stated that the evidence presented to the grand jury consisted of the transcript of the victim's testimony at the first trial of appellant, fingerprints taken from the window and window sill of the victim's home and evidence that the victim was raped as shown by the hospital and doctor's record. No comparison of any fingerprints was made before the grand jury.
The rule has been well settled by decisions of this Court and by the United States Supreme Court that indictments are not held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury.
In the case of State v. Matthews, 218 So.2d 743, 744 (Miss. 1969), this Court stated:
This procedure is of course based upon the general rule that the law does *922 not permit the court to go behind an indictment to inquire into the evidence considered by the Grand Jury to determine whether it was in whole or in part competent and legal.
The United States Supreme Court speaking through Justice Black in Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 409, 100 L.Ed. 397, 402 (1956) stated:
If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a role would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.
In support of his contention that the indictment should have been quashed appellant relies on the case of State v. Bates, 187 Miss. 172, 192 So. 832 (1940) where Bates was indicted by a grand jury on the basis of information obtained from his private books and papers that were produced before the grand jury in response to a subpoena duces tecum. The question before the Court in Bates was the construction of section 1286, Mississippi Code 1930 (now section 2529, Mississippi Code 1942 Annotated) (1956), which provides as follows:
No person shall be excused from attending and testifying before a grand jury, or before any court, or in any cause or proceeding, criminal or otherwise based upon or growing out of any alleged violation of the provisions of law as to gambling or gaming, or as to operating a bucket-shop, or the dealing in contracts commonly called "futures," of which he shall have knowledge, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify or produce evidence, documentary or otherwise, before the grand jury or any court; provided, that no person so testifying shall be exempt from prosecution or punishment for perjury in so testifying. Any person who shall neglect or refuse to so attend or testify, or to answer any lawful inquiry, or to produce books or other documentary evidence, if in his power to do so, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars, or by imprisonment for not more than ninety days, or by both such fine and imprisonment.
The Court held that the statute should be liberally construed to give complete immunity from prosecution to Bates whose private papers and books formed the basis for his indictment since they were obtained without his authority, and that it would not examine the proceedings of the grand jury merely to see whether they acted on competent evidence, or whether it was legal or relevant.
The motion to quash the indictment was properly overruled by the trial court.
Appellant did not argue the third, fourth and fifth grounds of his assignment of error, but we have carefully considered these assignments of error and find no merit in any of them.
The case is therefore affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.