523 So.2d 302 (1988)
Ed HOOD, Edwin Earl Hood, Frank Hood, Ricky Smith and Arnold Carraway
v.
STATE of Mississippi.
No. 57463.
Supreme Court of Mississippi.
March 16, 1988.
Rehearing Denied May 4, 1988.
Edward E. Patten, Jr., John T. Armstrong, Armstrong, Hoffman & Patten, James W. Henley, H. Brand Henley, Jr., Henley, Lotterhos & Henley, Hazlehurst, for appellants.
*303 Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
GRIFFIN, Justice, for the Court:
The appellant, Ed Hood, a long-time supervisor in Copiah County, and the other appellants, were convicted of conspiracy to commit voter fraud through the illegal use of absentee ballots. We have thoroughly examined the record and studied the appellants' nine assignments of error, and find only two worthy of consideration, the use of outside influences on the grand jury. This assignment is meritorious, and requires reversal; also considered is a member of the grand jury serving on the petit jury. This was wrong.
The appellants received a fair and impartial trial before a learned and fair circuit judge and the verdict of the jury is supported by the evidence; however, the motion to quash the indictment because the grand jury was subjected to three distinct outside influences constitutes error. This Court has noted on several occasions that any citizen having a complaint against him is entitled to have a grand jury investigate the complaint when no one else is present other than the grand jurors, the sworn witnesses who are being examined, and the duly authorized prosecuting officer. This is fundamental. Sanders v. State, 198 Miss. 587, 22 So.2d 500 (1945), where the Court went on to say:
The rule is stated in 38 C.J.S. Grand Juries, § 40, at page 1039, as follows: "It is generally held that in the absence of any imperative necessity therefor, the presence in the grand jury room at any time during the session of the grand jury of any person other than the witness undergoing examination, and the duly authorized prosecuting officer, is improper," citing the case of State v. Owen, 156 Miss. 487, 126 So. 25, 28 and cases from other jurisdictions. In the Owen case our Court said, among other things, that "if the door of the grand jury room is open to righteous outside influences, this would be an entering wedge for the admission of corrupt outside influences. If the law and order league is permitted to enter, then sooner or later the league against law and order will find its way in... . There is only one safe, sound rule, and that is to close the door of the grand jury room tight against all outside influences."
22 So.2d 501, 502.
We have first focused on the proper rule and now relate the facts which clearly reveal that the rule was violated. In October, 1983, the United States District Court for the Southern District of Mississippi in Pendleton v. Hood, C.A. No. J84-0519(B), a redistricting suit, ordered a special election for the offices of supervisors in Copiah County, Mississippi. Pursuant to the order of the federal court, a democratic primary was conducted in District No. 4, where W.E. Hood was the incumbent. Hood and Manuel Welch were the candidates. Hood was the victor in a very close race  877 to 858 votes.
Welch employed two attorneys  Carroll Rhodes and Jim Shannon  to represent him in contesting the election. A protest was filed before the County Democratic Executive Committee. This failed, and Shannon and Rhodes elected to forego an election contest under state law and filed an action alleging discriminatory acts under Section 2 of the Federal Voting Rights Act. Welch, et al. v. McKenzie, et al., C.A. J84-0030(B), United States District Court for the Southern District of Mississippi. The federal court was requested to declare Welch the Democratic nominee or in the alternative to set aside the election and order a new one. The United States District Court, by Judge William H. Barbour, Jr., dismissed the action and the case was pending on appeal in the Fifth Circuit at the time of the indictment herein.
Shannon and Rhodes, according to them, spent about one hundred hours investigating fraud by W.E. Hood, et al. in preparing Welch v. McKenzie, and among other activities formed a group called "Citizens for Better Government," Shannon serving as attorney for the citizens group. This group used the news media to criticize the *304 district attorney, at least the news media was invited to the meeting wherein the district attorney was criticized and accusations were made that the district attorney would prosecute some and not others and among those he would not prosecute were public officials in Copiah County, Mississippi.
As a diligent and honest prosecutor would, the district attorney responded by stating that he would subpoena the members of the citizens group to the grand jury and invite all others with any information or proof of wrongdoing on the part of public officials to contact him. The district attorney did not subpoena Shannon or Rhodes but invited them to appear before the grand jury. The invitation was accepted. As a matter of fact, Shannon was the first witness to testify on the Hood matter, offering his testimony without having been interviewed by the district attorney or a determination made as to his personal knowledge of any misconduct. Among other things related to the grand jury by Shannon was a copy of Judge Barbour's opinion in Welch v. McKenzie, supra. Judge Barbour's opinion becomes important, and so that it might be better understood, we copy herein the significant portions of said opinion:
"It is not, of course, improper for a candidate to urge his supporters to utilize the absentee voting procedures where they are applicable, nor is it improper for a candidate to instruct his supporters as to how they may obtain and vote such ballots. It is clear that the Defendant, W.E. Hood, exerted considerable efforts in doing this. Of the 115 absentee ballots cast, Hood received 111 votes to Welch's 4 votes. This number of absentee ballots greatly exceeded the number of absentee ballots cast in any previous election in Copiah County. It is the method of obtaining these absentee ballots, of casting them and of counting them that must draw the attention of the Court.
"As stated above, there are two classes among those persons eligible to cast their ballot through the absentee process. The first class consists of those persons who are able to present themselves at the registrar's office and the second class consists of those persons who are either temporarily residing elsewhere or are physically incapacitated so that they cannot present themselves directly to the registrar. In practically every instance of the 115 absentee ballots cast in the second primary in the race for Supervisor of District 4 of Copiah County, the ballots were improperly obtained. The proof is clear that lists were prepared by supporters of W.E. Hood of those voters who desired absentee ballots. Those lists were presented to the registrar's office by one of three persons, Edwin Earl Hood, Arnold Carraway or Mildred Brent. Edwin Earl Hood is the son of W.E. Hood. Arnold Carraway is a county employee, working for the District of W.E. Hood. Mildred Brent is a county employee whose primary duties are the preparation of purchase orders at the request of W.E. Hood or the other county supervisors. In only few instances did the absentee voters present themselves direct to the registrar's office for the purpose of applying for and voting an absentee ballot. In no instance did any of those not presenting themselves directly to the registrar's office request an absentee ballot by mailing the proper application to the registrar's office.
"Upon presentation of the lists to the registrar's office, either of the two deputy registrars, as directed by registrar Mildred Ferguson, prepared an application for each of the names listed and marked the application showing the reason why such voter was eligible to vote by absentee ballot. This reason apparently had been placed on the list by whomever had prepared it.
"Upon completion of the application, the registrar or one of her deputies clipped the application to an absentee ballot and an absentee ballot envelope. At various times these `packets' were handed either singly or in groups numbering several to Arnold Carraway, Mildred Brent or Ricky Smith, another county employee working in the District of W.E. Hood. None of the absentee ballots were mailed to any voters.
"After receiving the packets, those persons then apparently distributed the packets *305 to the various voters and W.E. Hood or his supporters had notaries public go to the houses of the voters. The notaries public were Mildred Brent, Richard Belding, another county employee, and Denise Strong. Apparently the procedure was for the notary to have the voter sign the Application and swear to it and then the notary would acknowledge the oath. On the same occasion the voter would mark his ballot, place it in the envelope, sign the affidavit contained on the envelope and have the notary acknowledge that affidavit. In a large number of instances the Certificate of Attesting Witness was not signed. The notary then returned the absentee ballot envelope with the ballot contained in it and the Application to the registrar's office rather than the voter returning it by mail as required. There is no proof that any of the voters were improperly influenced in the marking of their ballots.
"Accordingly, all but a few of the 115 absentee ballots cast were subject to challenge because of the failure to follow the proper procedures for obtaining and casting those ballots. In addition, 58 of the ballots were invalid for failure to have the Certificate of Attesting Witness filled out on the back of the absentee ballot envelopes.
"The official election returns indicate that W.E. Hood received a total of 877 votes, of which 111 were by absentee ballots cast at the following precincts: Dentville  54; Carpenter  31; Crystal Springs South  24; Crystal Springs North  1. Forty-nine of the absentee ballots cast for W.E. Hood at the Dentville precinct did not have the Certificate of Attesting Witness filled out on the back of the absentee envelopes. Nine of the absentee ballots cast for W.E. Hood at the Carpenter precinct did not have the Certificate of Attesting Witness filled out on the back of the absentee ballot envelopes.
"Welch then filed a challenge to the second primary election. Welch never filed an election contest in state court... .
"... The Democratic Executive Committee voted to reject Welch's challenge and to certify W.E. Hood as the Democratic nominee.
"There was direct evidence of fraud in the instances of six electors of the Crystal Springs South Precinct in District Four. Applications for absentee ballots were signed for Patricia Tillman, Carrie Newell (in the name of Carolyn Tillman, her former maiden name), Mary Jane Tillman, Sandra Faye Tillman, Ora Lee Tillman and O.C. Tillman. Carrie Tillman and Mary Jane Tillman both testified that they had, in fact, signed those applications. However, each of the six specifically testified that they had not signed the Affidavit on the absentee ballot envelope and that each would have voted for Manuel Welch rather than W.E. Hood. The testimony showed that one Sara "Fat Ivory" Johnson had brought the six applications to the Tillman home. Each of the Applications and the affidavits on the absentee ballot envelopes were acknowledged by Richard Belding as the notary public. Each of the applications, except that of Sandra Faye Tillman, shows that it was delivered by the registrar to Ricky Smith. The Court is convinced by clear and convincing evidence that fraud was perpetrated on these six voters and because of the aforementioned connection between Richard Belding and Defendant W.E. Hood and Ricky Smith and W.E. Hood that that fraud can be directly connected to W.E. Hood. Four of these fraudulent absentee ballots were actually counted, each having been counted for W.E. Hood. The absentee ballots of Sandra Faye Tillman and Ora Lee Tillman were not counted because those two persons actually went to the polls on election day and voted in person. When the envelopes containing these two ballots were opened in Court, it was found that both had been cast for W.E. Hood.
"Mildred Ferguson, the registrar, testifying through deposition since she has died while this case has been pending, testified that she had, in fact, handled the applications and ballots in the manner which the rest of the proof showed and, in fact, had kept very careful records as to whom the applications and ballots had been delivered. Mrs. Robert Tyson, the deputy-registrar, *306 testified that she and the other deputy-registrar had handled the absentee ballots in this fashion in this election because it was the same way that they had always handled them. Denise Strong, a notary public who notarized a number of the applications and envelopes, testified that she had called the registrar for instructions as to completing the absentee ballot envelopes and had been informed by Mrs. Ferguson that it was not necessary for her to fill out the Certificate of Attesting Witness. Mrs. Ferguson further testified that she had refused to hand any applications directly to W.E. Hood because he was a candidate. Because of these facts, because of the straightforward manner in which these witnesses testified, and because it would make no sense for the registrar to intentionally instruct Mrs. Strong in an improper manner if she were in collusion with the Defendant, W.E. Hood, it is this Court's conclusion that the registrar's office did not knowingly and intentionally participate in any fraudulent activity. It is clear that the procedures used by the registrar's office were contrary to the laws of the State of Mississippi. It is incomprehensible to this Court as to why the registrar did not herself read the absentee ballot provisions or seek instruction from a knowledgeable attorney when it becomes apparent that a large number of absentee ballots were being requested. On the other hand, if she and her office had been intentionally active in seeking to defraud the black voters of Copiah County and the candidate Welch, they would have at least tried to learn the proper mechanics of the absentee voter provisions and comply with them.

* * * * * *
"... The actions of the supporters of W.E. Hood and Mr. Hood himself were no more than a concentrated effort to re-elect an incumbent at all costs, including fraud. While irregularities are apparent, these do not constitute `episodic' events in the sense that they are part of an over-all scheme or pattern. Rather, these were isolated and singular incidences of misconduct and improper administration. The misapplication of the Mississippi absentee balloting procedure in and of itself did not operate so as to dilute black voting strength. This error on the part of the Circuit Clerk was due to ignorance of the law and was not a conspiracy; her actions did not constitute a practice which had the effect of diluting black voting strength.
"In summary, these isolated actions on the parts of the individuals and the incumbent, W.E. Hood, as well as the Circuit Clerk are simply not the type of `standard, practice, or procedure' which was contemplated as the evil at which the Voting Rights was aimed. Under Mississippi law it is clear that at least 58 of the absentee ballots counted for Hood are invalid, a number sufficient to allow the state courts to certify Welch as the winner of the election."
After the testimony of Shannon and Rhodes, who testified on the day following Shannon, and the review of Judge Barbour's opinion, as well as the appearances of other witnesses, the grand jury returned the indictment here on February 25, 1985. It should be noted that, at the time, Shannon and Rhodes were representing Welch in the civil suit in federal court against Hood. On February 26, 1985, Rhodes described the grand jury action as "courageous" and stated, "I fully expect the district attorney can secure convictions." Without question, the two attorneys were interested in having Hood indicted. It was not shown at the hearing that they possessed any firsthand information concerning a single election ballot. This is supported by the fact that neither testified in the trial of the case.
The trial judge in overruling the motion to quash the indictment did not find that the appearance of Rhodes or Shannon or Judge Barbour's opinion were improper influences but found that there was substantive and credible evidence to support the grand jury's action. We must note at this juncture the circuit judge could not have known what other testimony the grand jury heard. Grand jury proceedings are sacred and the courts cannot go behind an indictment and inquire into evidence considered by the grand jury. State v. *307 Matthews, 218 So.2d 743 (Miss. 1969); Case v. State, 220 So.2d 289 (1969). No grand juror testified as to the reasons for their indictment and none could have. Sanders v. State, supra, and Matthews, supra, prohibit a review of the sufficiency of the grand jury evidence, so the circuit judge had no evidence before him to support any finding concerning what effect Judge Barbour's opinion or the testimony of Rhodes and Shannon had on the grand jury.
Grand jurors are prohibited from giving evidence under their oath so an evidentiary hearing to determine the effect of improper influences on a grand jury would be prohibited. The sole inquiry is whether or not the grand jurors were subjected to improper influences.
The grand jury was told in no uncertain terms by Judge Barbour's opinion that Hood and his associates were guilty of fraud. The State concedes that this was improper.
The State in making this concession was undoubtedly influenced by the language of this Court in State v. Owen, 156 Miss. 487, 126 So.2d 25 (1930). There a justice of the peace was indicted for extortion. The defendant was subject to an investigation by his local bar association in Forrest County. The bar association appointed a committee to investigate improper activities in justice of the peace court. This committee submitted its report to the bar association and it eventually found its way to the grand jury room, among other things the defendant was accused by the bar association of "flagrant violations of the law." This Court, in a lengthy opinion, held that the presence of the report in the grand jury room and its consideration by the grand jury was improper and of such character as to vitiate the indictment. The Court stated, among other things, that the bar association was a powerful influence in the community and that the hearsay evidence embodied in the report was an improper influence. Certainly a finding of a well-respected member of the federal bench should be afforded the same deference as a committee of a local bar association. It was improper for the grand jury to consider Judge Barbour's opinion.
In Welch v. State, 68 Miss. 341, 8 So. 673 (1891), an attorney engaged in the prosecution of the case went before the grand jury. This was held to be improper. It was apparent the lawyer could not give firsthand information and his appearance was declared to be one "unsanctioned by law." In Wilson v. State, 70 Miss. 595, 13 So. 225 (1893), a telegraph company was allegedly defrauded and its attorney appeared before the grand jury as a private prosecutor for the purpose of obtaining an indictment. He stated that he went on his own and not as an attorney for the company. He was interested in seeing the defendant convicted because he "thought he was a great scoundrel", a remark similar to that of Rhodes.
The candid statement by Mr. Finlay that he went before the grand jury because he thought the appellant to be a great scoundrel, and therefore desired his indictment and conviction, presents the precise reason why he should not have gone before the jury, for it is just such influence that the law forbids. He was not a witness before that body, and was not an officer having any duty to perform, touching the matter under examination. His purpose must have been to advance, in some way, the prosecution, and this is precisely what the law prohibits to be done. The case is covered by the decision in Durr v. State, 53 Miss. 427, and Welch v. State, 68 Miss. 341, 8 So. 673.
In State v. Barnett, 98 Miss. 812, 54 So. 313 (1911), there was no inference that an attorney for a party allegedly defrauded by the defendant procured his appearance before the grand jury nor that he even encouraged an indictment or did anything except to relate details of a transaction. Still the Court said this was improper and sustained an order of the lower court quashing the indictment. To the same effect is Collier v. State, 104 Miss. 602, 61 So. 689 (1913), where an attorney appeared before the grand jury and spoke for 30 or 40 minutes, the Court concluded as follows:

*308 It appears in this case that the private attorney who went before the grand jury had not been summoned as a witness in the case against appellant, that he was not an officer having any duty to perform in the matter before the jury, and that he was in fact an outsider. The purpose of the law is to prevent outsiders from taking any part whatever in the deliberations of the jury, and to prevent them from influencing the jury in any manner and to any extent in their effort to reach proper conclusions. It must have been the purpose of the attorney in this case, when he went before the grand jury to advance in some way the prosecution of the case against the appellant. We emphatically disapprove of all interference or influence by outsiders with the grand jury during its deliberations. Its members should be permitted to act free from sway or control from any source. As an informing and accusing tribunal it has an important and solemn responsibility. It owes a duty to the state and a duty to the citizen. Its performance of these duties should be without fear or favor or any other manner of influence.
The judgment of the court below is reversed, the indictment quashed, and the defendant held to await the action of another grand jury.
61 So. at 690.
In Sanders, supra, the circuit judge out of the desire to be helpful since he was otherwise not occupied by the duties of his office, agreed to take the district attorney's place while he was home with a sick member of his family. There was no finding that the judge made any effort to improperly influence the grand jury but nevertheless a murder indictment was dismissed by this Court and the Court found the position of a defendant attempting to prove improper influence to be a difficult one, and said the following:
In the case of State v. Bacon [77 Miss. 366, 27 So. 563 (1900)], hereinbefore cited and discussed, several of the grand jurors were permitted to testify as witnesses on the hearing of the motion to quash the indictment, but whether their testimony was given with or without objection, and whether it tended to uphold rather than impeach the indictment, does not appear. But this Court held in the more recent case of Lewis v. State, 132 Miss. 200, 96 So. 169, that grand jurors are incompetent to testify for the purpose of impeaching their indictment on a motion to quash. And in the case of State v. Barnett, hereinbefore cited, some of the grand jurors testified not in the impeachment of, but for the purpose of sustaining the indictment, and said that they were not influenced to any extent by the presence of an unauthorized attorney in the grand jury room when they had the case under consideration, and there was no testimony to the contrary. This Court, however, held that the indictment should have been quashed.
Since the grand jurors were incompetent as witnesses in the case at bar to testify that the return of the indictment was influenced by the presence of the Circuit Judge in the grand jury room and by his participation in its deliberations to the extent stated by him on the motion to quash, the accused was placed in the attitude of having to make proof of such fact, if it could be made at all, by the trial judge who was passing upon the motion. The occasion should not arise where a defendant will be placed in that attitude, even though the trial judge is willing to disclose with the utmost frankness and candor all that has transpired, as was true in the case here. Nor should it ever be true that a judge in such an instance should have to pass upon the rectitude of his own conduct or the issue of whether it had unduly influenced the action of the grand jury to the prejudice of the accused. Ordinarily an accused would be unable to prove more than the fact that the Judge was present in the room at the time complained of. Moreover, it would be next to impossible for him to prove that other unauthorized persons went before the body and used improper influence to have him indicted, since such proof would have to be supplied *309 by those guilty of the improper conduct.
22 So.2d at 503.
The State cites Case, supra, in support of the proposition that investigators are allowed to appear before the grand jury and give evidence which of necessity has to be at least part hearsay. In that case an investigator of the Forestry Commission appeared before the grand jury and the Court held that the Commission was charged with the duty of enforcing the laws pertaining to the protection of forests and woodlands and that the investigator as a member of the Commission was doing nothing more than performing an official duty when he investigated the firing of the woods. It must be assumed that the investigator in doing his duty was not taking aim at any particular person but only violators generally and is in an entirely different position from an attorney with an adversarial interest, and the Court stated so in no uncertain terms.
It is improper for a private prosecuting attorney to go before the grand jury. Collier v. State, 104 Miss. 60, 61 So. 689 (1913). It is error for the circuit judge to single out an individual and specifically point out the criminal character and kind of business in which that individual is engaged and bring pressure to bear on the grand jury to indict him. Blau v. State, 82 Miss. 514, 34 So. 153 (1903). A committee of the Bar Association whose motives were admittedly good should not be permitted to appear before the grand jury. State v. Owen, 156 Miss. 487, 126 So. 25 (1930). The important and solemn responsibility of the grand jury ought to be performed without fear or favor and without any manner of influence; and the door to the grand jury should be closed to outsiders who are not witnesses and have no official business to perform.
Hadaway was performing an official act in investigating forest fires. When he appeared before the grand jury he was not an outsider for the same reason the policeman was not an outsider in Matthews. The fact that Hadaway testified that he brought the case up in justice of the peace court and had the witnesses there for the preliminary hearing does not place him in the category of a special prosecutor employed to assist with the prosecution. We are therefore of the opinion that Hadaway's appearance before the grand jury was not an improper influence. The Court has not condemned as improper the appearance before a grand jury of officers charged by law with the enforcement of the law.
It is sometimes stated, though we believe mostly in jest, that the district attorneys control the grand juries, or dictate their conduct. Certainly we recognize that the district attorney influences the grand jury and he should as a representative of the people. However, the district attorney is elected by the people and takes an oath other than the one to tell the, truth. The law presumes that all officers act from proper motives and certainly one who is under oath to faithfully support the Constitutions of the United States and of the State of Mississippi will be as vigilant in protecting the rights of the innocent as he would be in seeking indictments against those whom he believes the competent evidence will support a verdict of guilty. The district attorney is in an entirely different position from the lawyer representing private interests.
We are not concerned with incompetent evidence; our concern is that of improper influence. An indictment may not be challenged because of incompetent evidence. Grant's Summary of Miss.Law, § 1738.1, Davis v. State, 255 So.2d 916 (Miss. 1971). The grand jury is an arm of the court. Certainly it cannot be subjected to improper influences no more than the court itself. Finally, it is improper for the judge of the court, directly or indirectly, to designate a particular individual as a violator of the law and if he does the indictment on seasonable motion will be quashed. Fuller v. State, 85 Miss. 199, 37 So. 749 (1904). Logic then dictates that it was error to present Judge Barbour's opinion designating Hood as a criminal to the grand jury.
Applying the authorities herein cited to the conduct of Shannon and Rhodes, *310 though the same may well have been properly motivated, and to the opinion of Judge Barbour, it is apparent that the circuit judge's opinion was flawed and did not follow the well-announced case law of this State. To uphold the judge's opinion, it would be necessary for us to overrule or at least modify the cases herein cited. This we are not inclined to do and therefore conclude that this case must be reversed, the indictment quashed, and the defendants held to await the action of another grand jury.
Now to the last question. After the appeal had been perfected, a motion in the nature of an Application for Leave to Proceed in Accordance with Mississippi Post-Conviction Collateral Relief Act, §§ 99-39-1, et seq., Miss.Code of 1972, was filed in this Court alleging that a member of the indicting grand jury had served on the petit jury. The State filed a response and the motion was passed for consideration on the merits. The State's response to the motion and admissions made by both parties on oral argument reflect that there is no dispute concerning the matter. The juror did serve as alleged and neither side was aware of it until some time later. We believe the district attorney when he stated that this particular juror was a very quiet person who took her seat near the back of the grand jury room which was shaped more like a hall or corridor than a room, and he never actually became acquainted with her. Proper questions were asked both by the court and the attorneys to elicit a response from the juror that she participated in the return of the indictment but none was forthcoming. It was wrong for the juror to serve and we think this is a proper case to address this question head-on.
First, our statutes provide that the judge on the opening day of a term of court first qualify the jurors, by determining the number that are present and competent to serve, and follow this with the selection of the grand jury, whose members go about their separate duties of inquiring into the criminal activity and other things imposed upon them by statute. This jury is given a separate charge from the other jurors and separated from them.
The remaining jurors are selected as petit jurors and in accordance with the applicable statutes this group becomes the triers of fact. During that particular term of court there is very little, if any, likelihood that a grand juror would be in a position to serve as a petit juror. Grand jurors serve until discharged by the court. They may be required to serve not only for the original term but succeeding terms and in vacation, while petit jurors are required to remain only one week, unless a case be not finished at the week's end. A new jury is summoned for the next week. These are the apparent reasons why only one Mississippi case has been brought to our attention where the event here occurred.
The only reported case is Ratcliff v. State, 197 Miss. 289, 20 So.2d 69 (1944). The court there apparently acknowledged that the juror who had served as a member of the indicting grand jury was disqualified but held that the appellant was not entitled to a new trial because his evidence did not establish that the defendant and his counsel did not know of such disqualification. Apparently this Court held that there was a waiver of the right to challenge the juror. We quote part of the opinion: "This disqualification was made the basis of the motion for new trial, but the motion does not allege that the defendant and his counsel did not know of the situation." We take this language to mean that a juror who serves on the indicting grand jury is disqualified from serving on the petit jury but if the defendant and his counsel know that the situation exists, then there is a waiver.
Here we have an entirely different situation. Neither side knew. There can be no waiver.
In Washington v. State, 478 So.2d 1028 (Miss. 1985), the constitutionality of our recidivist statute was challenged and among other things the appellant argued that it was unfair and unconstitutional for the grand jurors to be informed of his prior offenses. Judge Prather in passing on this had the following to say: "A grand jury of *311 necessity has to be informed of prior convictions before the indictment seeking enhanced punishment can be sought by the State. It must be noticed, however, that no grand jury member would ever be used as a trial juror." This language could be classified as obiter dicta but nevertheless it is the law which we now apply. The general rule is supported in Am.Jur.2d, Jury, § 312, as follows: "As a general rule, the grand jury which found the indictment against an accused, and each of the jurors, is disqualified from sitting on the petit jury to try the accused." That text further provides that as a general rule an objection should be made before the juror is sworn "although it has been held that the objection may be taken advantage of after the juror has been sworn and if not after the verdict has been rendered, provided the defendant was not guilty of negligence in taking advantage of his right to challenge." This appears to be consistent with Ratcliff, supra, and here, of course, neither side knew of the situation; thereafter, the juror was subject to challenge after the verdict.
We do not think it right and now condemn any practice whereby the accuser may also be the trier of fact.[1] This is consistent with the constitutional requirement of an impartial jury. Sixth Amendment of the United States Constitution and Section 25 of the Mississippi Constitution.
REVERSED, INDICTMENT QUASHED, DEFENDANTS HELD TO AWAIT ACTION OF ANOTHER GRAND JURY.
HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN and ZUCCARO, JJ., concur.
ROBERTSON, J., ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ., concur in part and dissent in part, with separate written opinion.
ROBERTSON, Justice, concurring in part, dissenting in part.
I concur in today's judgment, reversing as it does the conviction of these Appellants but only insofar as that reversal rests on grounds that a member of the grand jury served on the petit jury. I disagree with so much of the opinion of the Court as holds the indictment ought to have been quashed. I see nothing in this record to suggest that a legally impermissible influence was brought to bear on the grand jury.
One question before the Court is whether the indictment should have been quashed because the grand jurors were told of the federal court case of Welch v. McKenzie. A copy of Judge Barbour's opinion (which was less than complimentary of Appellants) was given the grand jury. Second, the attorneys for plaintiffs in the Welch case appeared and testified. On each point I find no error in the Circuit Court's handling of the matter.
A grand jury proceeding is a glorified probable cause hearing. The grand jury decides whether there are reasonable grounds to believe that the defendant committed the crime so that he ought be required to stand trial. Rules of evidence have never been enforced before the grand jury. Hearsay has always been allowed.
Our concern, first and foremost, ought to be fairness and reliability in the indictment process. Not every accused ought in fairness be subjected to the ordeal of a criminal trial. Indictments ought only be returned where there are objectively reasonable grounds to believe that a criminal offense has probably been committed and that the defendant has probably committed it. Conversely, when such grounds appear, the defendant ought be required to stand trial. To that end we ought insist that the grand jury be given all evidence tending to enhance the fairness and reliability of the decision to indict vel non.
*312 The Welch decision in United States District Court represents a neutrally considered view of the facts quite relevant to whether Ed Hood and the others have committed criminal voter fraud. The two attorneys, Rhodes and Shannon, had spent approximately one hundred hours investigating the matter. I cannot for the life of me see how grand jury access to the District Court's decision and the testimony of Rhodes and Shannon could be said improper. Sensibly, such access may only have enhanced the grand jury's capacity to decide what it has been charged to decide: has criminal voter fraud probably taken place, and did Ed Hood and the others probably participate in it?
The worst that may be said of the evidence from the two attorneys plus Judge Barbour's opinion is that each is hearsay. Past that, this evidence seems quite probative on the issue of probable cause. We allow police officers to give similar opinions and hearsay testimony to grand juries every day. There is no principled way we can allow such and deny the evidence at issue here. I would overrule or disavow any suggestion in our prior cases to the contrary.
An examination of cases from other jurisdictions reveals that an indictment may not be contested on the basis that the evidence was incompetent, insufficient, or illegally obtained. State v. Bates, 187 Miss. 172, 192 So. 832 (1940); Davis v. State, 255 So.2d 916 (Miss. 1971); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (indictment will not be quashed for incompetent evidence); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (hearsay evidence); Lawn v. United States, 355 U.S. 339, 349-50, 78 S.Ct. 311, 318, 2 L.Ed.2d 321 (1958) (evidence unconstitutionally obtained); United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (evidence seized in violation of Fifth Amendment); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (evidence seized in violation of Fourth Amendment).
There appear only two avenues which may be successfully traveled to quash an indictment. The first is prosecutorial misconduct. Prosecutorial misconduct "infringes due process when a reasonable likelihood exists that it may induce action other than that which the grand jurors in their uninfluenced judgment would take," State v. Paulsen, 286 N.W.2d 157, 160 (Iowa 1979), or the misconduct usurps the grand jury role, State v. Pulawa, 62 Hawaii 209, 614 P.2d 373, 377 (1980). Most courts require a showing of prejudice before dismissing the indictment for this reason. United States v. Broward, 594 F.2d 345, 351 (2d Cir.1979), cert. den. 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310. See Wright & Miller, Federal Practice & Procedure, Criminal 2d § 111.1 (1982) p. 327. Also generally on improper influence, see Roger T. Brice, "Grand Jury Proceedings: The Prosecutor, The Trial Judge and Undue Influence," 39 Univ. of Chicago L.Rev. 761 (1971-72).
The second reason for which courts will quash an indictment is when unauthorized persons are present in the jury room. Some state, as well as federal, courts employ a per se rule, State v. Ringgold, 635 P.2d 626 (Okla. App. 1981) (too many assistant district attorneys in the grand jury room); Davis v. Traub, 90 N.M. 498, 565 P.2d 1015, 1016, (1977); United States v. Echols, 542 F.2d 948, 951 (5th Cir.1976), cert. den. 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387; United States v. Gold, 470 F. Supp. 1336, 1351, 1356 (N.D.Ill. 1979). Other states require prejudice to the defendant. Commonwealth v. Levinson, 239 Pa.Super. 387, 362 A.2d 1080, 1089 (1976); State v. Bowman, 423 N.E.2d 605 (Ind. 1981); Commonwealth v. Beneficial Finance Co., 360 Mass. 188, 275 N.E.2d 33, 45 (1971). As many states, including Mississippi, have an absolute prohibition against grand juror testimony, Sanders v. State, 198 Miss. 587, 22 So.2d 500 (1945); State v. Matthews, 218 So.2d 743 (Miss. 1969), proving prejudice may be difficult indeed. As in the case of prosecutorial misconduct, the rule against unauthorized persons in the grand jury room is to prevent improper influence. See State v. Edmonson, *313 113 Idaho 230, 743 P.2d 459, 467-68 (Idaho 1987); Dwire v. State, 381 N.W.2d 871 (Minn.App. 1986).
The prohibition applies to privately employed lawyers as well as extra state prosecutors, or judges. Miller v. State, 42 Fla. 266, 272, 28 So. 208, 210 (1900); State v. Hill, 88 N.M. 216, 539 P.2d 236 (App. 1975); Tiner v. State, 109 Ark. 138, 145, 158 S.W. 1087, 1089 (1913); Blevins v. State, 68 Alabama 92, 94 (1880). The instant case is not one which falls in the "unauthorized persons" category, though, since this term applies to persons in the grand jury room other than witnesses. For example, a private attorney, or anyone else for that matter, who is allowed to question witnesses before the grand jury would be violating the rule against unauthorized persons in the jury room, as would be someone who merely stood in the grand jury room.
This Court has twisted the concept of an "outside influence" to encompass witnesses who may have some bias as well as hearsay evidence of an influential nature. Even at trial where the rules of evidence operate to restrict the kinds of testimony the jury may hear, biased witnesses are not precluded from testifying because of an interest in the case, and no evidence is thrown out merely because it is influential.
At a time when grand juries have been under attack for decades for being expensive, inefficient, slow and cumbersome,[1] this Court proposes to adhere to a rule which makes the Mississippi grand jury more unwieldy than any other. In the instant case, the district attorney asked those two persons who knew more about the voting fraud allegations against W.E. Hood than anyone else to lay out what they knew before the grand jury. They were followed by other witnesses. Theoretically, if Shannon and Rhodes had testified with only hearsay and this had not been backed up by some non-hearsay evidence, probable cause would be difficult to establish and no indictment would have been forthcoming. Happily for Hood, even his reputation would remain intact because of the protective cloak of secrecy enveloping grand jury proceedings.
Even if the indictment were based on hearsay, what of it? As the Supreme Court wrote in Costello v. United States, 350 U.S. at 359, 76 S.Ct. at 408, "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." See also State v. Matthews, 218 So.2d 743 (Miss. 1969) (indictment based on hearsay not invalid).
The Mississippi cases which hold that it is improper for a privately employed attorney to address the grand jury while it is deliberating, or prevent the private attorney from acting as the prosecuting attorney in front of the grand jury are soundly based on the "unauthorized person" principle of improper influence; but the cases in which this Court has restricted the kinds of evidence which the grand jury may properly hear should be overruled. State v. Owen, 156 Miss. 487, 126 So. 25 (1930) is the only case anywhere in the world that throws out an indictment on grounds that improper evidence was given the grand jury.
Overruling legal principles embedded in prior decisions should not be done lightly or often. Here, however, two compelling points suggesting overruling should be noted. The rule announced in State v. Owen, for example, is not the sort of rule that has engendered detrimental reliance. No one relies on such a rule in deciding whether he will commit a possibly illegal act. This case is not like those involving property and contract where the overruling is likely to change rules persons have relied upon in good faith.
The positive reason why we ought overrule the cases cited by the majority is that they simply make no sense. Why should a grand jury not be given access to information developed by attorneys in the course *314 of a hundred hour investigation? If the argument is that the attorneys might advocate as well as inform, it surely fails. The district attorney does likewise, as do law enforcement officers and every other grand jury witness who can get away with it. The suggestion that advocacy by the district attorney and law enforcement is somehow legitimate by reason of the official position and responsibility of the advocate is absurd on its face.
Today's condemnation of the District Court decision makes even less sense. In a variety of contexts our courts would hold that decision entitled to full faith and credit and, as well, collateral estoppel effect. By definition it represents a dispassionate review of the relevant evidence by a government official whose impartiality is far less suspect than that of the district attorney or law enforcement officials.
In my view the Circuit Court correctly overruled the motion to quash the indictment. To the extent that our prior cases suggest to the contrary, they should be overruled.
ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ., join in this opinion.
NOTES
[1] One of the favorite anecdotes in the history of circuit court practice in this state concerns the elderly juror who approached the judge requesting an excusal from jury duty because, "I can only hear out of one side." Whereupon the judge retorted, "I'll place you on the grand jury  they only hear one side."
[1] See James P. Whyte, "Is The Grand Jury Necessary?" 45 Virginia Law Review, 461 (1959) p. 488; Lewis Pointdexter Watts, Jr. "Grand Jury: Sleeping Watchdog Or Expensive Antique?" 37 N.C.L.R. 290 (1958-59). Note: "Criminal Procedure  Should The Grand Jury Be Abolished?" 45 Ky. L.J. 151 (1956-57).