626 So.2d 121 (1993)
Albert NELSON
v.
STATE of Mississippi.
No. 91-KP-526.
Supreme Court of Mississippi.
October 28, 1993.
*122 Albert Nelson, pro se.
Michael C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
We are once again called upon to determine whether the trial court properly responded to a post conviction challenge of plea proceedings. We hold that Nelson was entitled to an evidentiary hearing to determine the extent to which he received and the effect of misinformation concerning whether the offense in question was punishable by a possible fine, as well as incarceration and whether there were processes available to secure the testimony of out-of-state witnesses. We also discuss with disapproval the manner in which a substitute judge was appointed in this case.

I
Nelson was indicted by an Oktibbeha County Grand Jury, on January 27, 1983, for the August 11, 1982, armed robbery of Presley Harrell. The indictment charged that Nelson pulled a knife on Harrell and escaped with $1,800 in cash. A second indictment for armed robbery bearing a consecutive number was entered, presumably on the same day.[1] *123 Nelson, who alleges that he is a resident of Chicago, Illinois, was not served until 1988. There was a further delay in proceedings due to a bond forfeiture when Nelson returned to Chicago after having been served.
On January 26, 1990, Nelson entered a plea of guilty to two charges of simple robbery pursuant to a plea bargain agreement. He was sentenced to serve terms of ten years for each charge, the sentences to run consecutively. During the plea colloquy Nelson acknowledged that he had signed a petition to enter a guilty plea and that he had gone over that petition with his lawyer. He professed to understand what was in the petition. Nelson's ability to read was not inquired into, nor was he asked whether he read the petition. The record discloses that he is thirty-nine years old and completed the eighth grade.
The petition, a standardized form, contains an enumeration of rights waived by a plea of guilty including "the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor... ." The form was filled in to reflect that the offense carried a possible penalty of a minimum of three (3) years and a maximum of life imprisonment and a maximum fine $10,000 and that the district attorney would recommend a sentence of ten years on each charge, reduced to simple robbery, to run consecutively. In the space provided for the petitioner to state his involvement in the crime was stated, "I robbed several individuals."
Judge John Montgomery, presiding at this matter, asked Nelson if he understood he had signed a petition saying that he understood his "constitutional rights; that is, the right to a trial by jury, the right to testify, the right to remain silent, the right to appeal, etc." Nelson responded affirmatively.
Judge Montgomery then informed Nelson that he was employed by the Oktibbeha County district attorney's office and secured the indictments against Nelson in the instant case. He asked Nelson if Nelson had discussed this issue with his attorney and whether he wanted the judge to recuse himself in this matter. Nelson responded affirmatively to the question whether he had discussed the matter with his attorney and in the negative as to recusal. Montgomery then found that Nelson waived any objection to his failure to recuse.
Nelson informed the court that he was 39 years old and that he had an eighth-grade education. He stated he understood the plea arrangement he had signed and that his attorney had gone over the document in detail with him. No person threatened him to sign the arrangements or to enter a plea of guilty. Nelson said he was pleading guilty because he was guilty and that the plea was of his own free will. The court then sentenced Nelson to ten years, consecutive, on each count.

II
Nelson filed a motion to vacate his conviction and sentence in the Oktibbeha County Circuit Court on April 25, 1991. He alleged that he told his attorney, Mark Williams, that he could not have committed the August 11, 1982, robbery of Harrell as he was in Chicago at the time. According to the allegations in the petition, Williams told him that out-of-state witnesses "would not do any good" and that Nelson stood the chance of a life sentence and a fine of $10,000, if convicted of armed robbery.
Nelson claimed that, because he was not properly informed of the minimum and maximum sentences he could receive for entering pleas of guilt on the robbery charges, he is entitled to have his conviction vacated. Vittitoe v. State, 556 So.2d 1062, 1065 (Miss. 1990). Nelson also claimed that because the trial court failed to advise him of his right to call witnesses, to testify on his own behalf and to confront and cross-examine witnesses of the State, his rights under Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969), were violated.
Nelson also claimed his attorney was ineffective as he (1) failed to object to Montgomery's *124 presiding over the case; (2) failed to move for the indictment to be quashed; (3) lied to Nelson that conviction of armed robbery carried a $10,000 fine; and (4) lied to Nelson that he could not call witnesses from out-of-State. Nelson asserted that if he had known armed robbery did not carry a fine of $10,000 and that he could call witnesses from outside the State, he would have exercised his right to trial by jury.
Nelson sought an evidentiary hearing on this motion and, ultimately, a vacation of his conviction and sentence. On May 10, 1991, Judge Robert Evans denied the petition. Evans was appointed to hear the case following an order of recusal signed by Judge Lee J. Howard, wherein Howard recused himself and Montgomery as both judges had been members of the Oktibbeha County District Attorney's Office at the time that the indictments were rendered. That order was also entered on May 10, 1991.
In his order denying relief, Evans found the following: (1) paragraph 8 of the plea arrangement signed by Nelson stated he could receive as little as three years and as much as life imprisonment for an armed robbery conviction and that he could be fined up $10,000 for a conviction and that, because he was not fined, the issue of the fine was moot; (2) Nelson was informed by Judge Montgomery of his right to have Montgomery recuse himself and waived that right; (3) the information regarding Nelson's constitutional rights as required by Boykin was found in paragraph 6 of the signed plea agreement; and (4) that the indictment and amended indictment sufficiently stated a charge against Nelson. The order does not specifically address Nelson's ineffective assistance assignment.
Nelson filed a motion with the circuit court to vacate the order pursuant to Miss.R.Civ.P. 60(b) asserting that Judge Evans was not properly appointed and citing Miss. Code Ann. § 9-1-3 (Supp. 1992). This motion was denied by Judge Evans on June 14, 1991, by an order reciting that his appointment was made pursuant to the provisions of Miss. Code Ann. § 9-1-105(5).
Notice of appeal to this Court was filed on June 3, 1991, and again on July 1, 1991. The second notice incorporated the ruling of the trial court with regard to the Rule 60(b) motion. Nelson has perfected his appeal in a timely manner and he raises the following issues:
1. Whether "the Court (Judge Robert Evans)" lacked jurisdiction because his appointment did not comply with Miss. Code Ann. § 9-1-105(5), because notice of the order was not sent to the Chief Justice as there prescribed;
2. Whether Nelson's plea was infirm under Boykin v. Alabama and Miss. R.Crim.Pro. 3.03; and
3. Whether Nelson suffered from ineffective assistance of counsel.

III

a.
The question of substitute judges for cases or periods of time when the judge or judges in a particular district cannot serve is governed by the provision of Miss. Code Ann. § 9-1-105. The subsection at issue here is one which provides that the trial judges of an affected district may agree with a trial judge of a different district that the latter judge will handle the matter. Miss. Code Ann. § 9-1-105(5) (1972). In the event of such an agreement, the trial judges of the affected district are required to give notice of such an appointment to the Chief Justice of this court. Id. If, after seven days, the Chief Justice has failed to appoint another person, the person designated by the judges of the affected district shall be deemed appointed. Id.
In the instant case, no notice was given to the Chief Justice. Indeed, the record reflects that the appointed judge entered a dispositive order on the same day that the order appointing him was filed, which was barely fifteen (15) days after the filing of the motion to which it was addressed. Nelson contends that this defect is fatal to the attempted appointment and that Judge Evans therefore had no power to act. He urges that the order denying his motion to vacate his plea and sentence be vacated and the *125 matter remanded for consideration by another judge.
The State asserts that the case of Herring v. Herring, 571 So.2d 239, 241 (Miss. 1990), controls this issue. In Herring, this Court held that an order of recusal which is filed after the judge who replaces the recused judge has made rulings does not, in itself, vitiate the rulings of the appointed judge. Id. at 243. Rather, "(h)aving assumed his duties as special chancellor under this order and issued a fiat and writ, and subsequently entered an order rescheduling the hearing for a later date, he was a de facto judge whose orders were not subject to collateral challenge." Id. at 243-44.
The facts of Herring are a bit complicated with two judges attempting to act at the same time. Nelson seeks to distinguish it as a civil as opposed to criminal case. His argument fails. The principle reiterated in Herring is well established in our law in both a civil and criminal context. Crocker v. Sears, Roebuck & Co., 346 So.2d 921 (Miss. 1977); Upchurch v. City of Oxford, 196 Miss. 339, 17 So.2d 204 (1944); Bird v. State, 154 Miss. 493, 122 So. 539 (1929); Miss. Code Ann. § 25-1-37 (1972). These authorities make it clear that one who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts. Any challenge regarding the validity of actor's appointment must be brought against the actor in proceedings contesting the right to office. Upchurch, 196 Miss. at 345, 17 So.2d 204; Bird, 154 Miss. at 500, 122 So. 539 ("It is well settled in this state that the acts of a de facto judge are valid, regardless of whether he was properly appointed or qualified or not... . [T]he appellant was not in position to challenge his right to hold office, the right to question his holding the office being for the state alone to raise in appropriate proceedings.") These precedents compel the conclusion that Nelson's prayer for reversal based upon the failure to comply with the statute regarding the appointment of Judge Evans must fail.
That said, however, we take this opportunity to caution our trial courts with regard to compliance with the statute and with the Code of Judicial Conduct. In Jenkins v. State, 570 So.2d 1191 (Miss. 1990), we held that participation as prosecutor during proceedings in which the accused was indicted compels recusal of the trial judge under the Code of Judicial Conduct and Miss. Code Ann. § 9-1-11 (1972). Jenkins, 570 So.2d at 1192-1193. Where a judge is unable to serve by reason of "disqualification ... pursuant to ... Section 165, Mississippi Constitution of 1890, or any provision of the Code of Judicial Conduct ... the Chief Justice of the Mississippi Supreme Court with the advice and consent of a majority of the justices" of that court may appoint a substitute. Miss. Code Ann. § 9-1-105(1).
Section § 9-1-105(5), which provides that the judges of a district may by agreement with the appointee judge, appoint a judge to serve where a judicial officer is unable or unwilling to hear a case or hold court for a period of time, makes no reference to disqualification as a basis for the inability to hear a case or hold court. The participation of the recused person in the selection of a replacement may itself raise questions of impropriety. See Ferry v. State, 245 Ga. 698, 267 S.E.2d 1 (1980) (Holding that such a practice violates the Code of Judicial Conduct); See also Edge v. Edge, 494 So.2d 71, 72 (Ala. Civ. App. 1986); Adler v. Seligman of Florida, Inc., 492 So.2d 730, 732 (Fla.App. 4th Dist. 1986). It is to be avoided in cases such as the instant one where, objectively viewed, there is an appearance of partiality. Jenkins v. State, 570 So.2d at 1193. Ferry, 267 S.E.2d at 2.
While § 9-1-105(5) may be read to authorize the procedure here attempted, with proper notice as there provided, the provisions of § 9-1-105(1) should be used in all instances where there is a recusal and the entry of the appointing order requires the participation of a judge who is recused. Moreover, even when § 9-1-105(5) is proper in particular circumstances, we view the notice provision of the statute as an important safeguard for the litigants and the public perception of justice and we trust that this reaffirmation of its validity will be sufficient to assure compliance in the future. Here our disposition on the merits renders it unnecessary to reverse in the exercise of our supervisory *126 responsibility, as we trust this matter will be cured on remand.

b.
Turning to the merits, we find several issues worthy of discussion. The issue of the fine arises because Nelson was informed that he faced a potential punishment of up to life imprisonment and a fine of up to $10,000. In fact, however, at the time of the offenses in question no fine was prescribed. See Miss. Code Ann. § 97-3-79 (Supp. 1992) prescribing a penalty for robbery with the use of a deadly weapon of not less than three years, if the jury so determines, life and Miss. Code Ann. § 97-3-75 (1972) prescribing the penalty for simple robbery as not more than fifteen years. The error was occasioned by the 1985 enactment of a catch-all statute prescribing a fine of up to $10,000 for all crimes for which no fine was otherwise prescribed. Miss. Code Ann. § 99-19-32(1). The ex poste facto provision of our constitution, of course, makes that fine inapplicable to Nelson. Miss. Const. of 1890, Art. 3, Sec. 16. King v. State, 304 So.2d 650 (Miss. 1974).
The trial court found that Nelson's claim regarding the $10,000 fine was "moot" because no fine was imposed. This is error. The question is not what sentence was actually given, but rather whether the accused was accurately advised as to the range of sentences available and, if not, whether the omission is of such insignificance under the circumstances that we can conclude with certainty that it played no role in the decision to plead guilty. Sykes v. State, 624 So.2d 500 (Miss. 1993). In Sykes we found that the failure to inform the accused that there was a minimum fine of $1000 did not require us to vacate a guilty plea because the fine was never imposed and under the circumstances it could not have played a role in inducing the plea. In other words, Sykes was induced to believe that the potential punishment was slightly less onerous than it actually was. The more onerous punishment was never imposed. More importantly, however, he was not harmed because there can be no claim that the misinformation induced the plea.
Here the situation is different. Nelson was led to believe that the potential punishment was more onerous than it was. We recognize that it is unlikely that the prospect of a substantial fine plays much of a role in the decision to enter a plea when lengthy incarceration is also in the offing. Nevertheless, Nelson says under oath that had he known that there was no prospect of the fine he would not have entered the plea of guilty. There was no contrary evidence. Like Vittitoe, who entered an open plea in ignorance of a mandatory minimum sentence, Nelson apparently accepted a plea bargain based on inaccurate information as to the maximum punishment that he faced in violation of Rule 3.03 Uniform Criminal Rules of Circuit Court. Vittitoe v. State, 556 So.2d 1062 (Miss. 1990). The petition to enter a guilty plea reflects the inaccurate information. The least to which Nelson is entitled is a full hearing to determine whether he, in fact, received and acted upon inaccurate information. Wilson v. State, 577 So.2d 394 (Miss. 1991).

c.
Nelson's claims concerning the failure to adequately advise him of his constitutional rights are less compelling. We note however, that the guilty plea colloquy left much to be desired. It is not enough to ask an accused whether counsel has explained his constitutional rights. Nor is a standardized petition to enter a plea sufficient standing alone. The court must go further and determine in a face-to-face exchange in open court that the accused knows and understands the rights to which he is entitled. Wilson v. State, 577 So.2d at 397-398.
Of pertinence here is the right to compulsory process. Nelson claims that he was told that his out-of-state witnesses would not do him any good. He characterized this as a "lie" by defense counsel. In the absence of a response from defense counsel and a hearing, we are left in the dark as to what was said. We do know that the court failed to advise Nelson face-to-face that he had a right to compulsory process for witnesses. This right is among those enumerated in the plea petition. The petition does not specifically mention out-of-state witnesses.
*127 In the usual case this would not matter but, where, as here, there is an unrebutted allegation under oath that the defense lawyer left an impression that out-of-state witnesses were of no use the failure takes on added significance. Both this state and the state of Illinois have adopted the "uniform law to secure the attendance of witnesses from without the state in criminal cases," which may be resorted to in cases such as this. Miss. Code Ann. § 99-9-27 et seq. (1972); 725 ILCS 220/1 (1993), formerly, Ill.Rev.Stat, Ch. 38 Part 156-1. It follows that an evidentiary hearing is necessary to resolve this issue.

d.
Nelson's claim of ineffective assistance of counsel is answered by what was said above. It should suffice to say that the failure to accurately advise Nelson of the possible consequences of a finding of guilt in the absence of a plea bargain and the failure to adequately advise him as to his rights regarding compelling the attendance of witness may, if proven, be sufficient to meet the test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nelson is entitled to an evidentiary hearing on this issue.

IV
For the foregoing reasons we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.
LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF IS REVERSED AND REMANDED.
HAWKINS, C.J., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
PRATHER, P.J., not participating.
NOTES
[1] This indictment is nowhere to be found in the record. Ultimately, however, Nelson entered a plea to both indictments, which were reduced to simple robbery, and received two consecutive sentences of ten years. It is that plea procedure which is under attack here, albeit, as to a single indictment.