## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-01020-SCT

*BEATRICE BARTON*

*v.*

*ROBERT EUGENE BARTON*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/95 |
| TRIAL JUDGE: | HON. DON GRIST |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS ROY TROUT |
| ATTORNEY FOR APPELLEE: | GARY LEE CARNATHAN |
| DISTRICT ATTORNEY: | RONNIE HARPER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/12/1998 |
| MOTION FOR REHEARING FILED: | 11/24/98 |
| MANDATE ISSUED: | 3/3/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This matter comes before the Court upon the granting of Robert Eugene Barton's petition for writ of certiorari. The Court of Appeals found that the special judge, Chancellor Grist, was without jurisdiction to hear the matter and reversed and remanded the case to the Lee County Chancery Court for appointment of another special chancellor to hear the case.

¶2. The authority of Chancellor Grist, appointed as special judge for this specific case, ended with the termination of the divorce proceeding. He did not have authority to hear matters related to contempt and modification of custody after a final judgment of divorce had been entered. Accordingly, we affirm the decision of the Court of Appeals.

### STATEMENT OF THE CASE AND FACTS:

¶3. On November 22, 1991, Don Grist, a sitting Chancellor for the Eighteenth Chancery Court District, was appointed as special judge to hear the First Chancery Court District case of *Barton v. Barton*. Chancellor Grist was appointed because the defendant and counter-plaintiff, Robert Eugene Barton, was a member of the bar practicing in the First Judicial District and had pending cases before all three chancellors

in the district. Neither party objected to this appointment.

¶4. On April 23, 1992, Special Chancellor Grist entered a final judgment of divorce. Beatrice was awarded primary care, custody and control of the minor children, Joshua Barton, born May 13, 1977, and Maria Barton, born September 29, 1983, subject to visitation rights in Eugene Barton.

¶5. On June 2, 1995, Eugene filed a motion for writ of assistance requesting the court to hold Beatrice in contempt for violating the divorce decree with respect to visitation. During this hearing on June 14, 1995, Eugene orally moved to modify custody based on changed circumstances. Also during this hearing, Beatrice's attorney argued that Chancellor Grist did not have authority to hear the matter. Chancellor Grist disagreed.

¶6. At the conclusion of the hearing, the chancellor found Beatrice in contempt of court. Temporary physical custody of the minor child, Maria, was awarded to Eugene. After a hearing in August of 1995, Eugene was awarded permanent custody of Maria.

¶7. In her direct appeal, Beatrice asserted that the special judge, Chancellor Grist, was without authority to hear both the contempt and the custody matter. The Court of Appeals agreed and reversed and remanded the matter to the Lee County Chancery Court for appointment of yet another special chancellor.

## ANALYSIS:

¶8. We must determine whether Chancellor Grist had the authority to rule on related motions after the final judgment of divorce was entered. Eugene Barton argues that Chancellor Grist, the special judge originally assigned to this case, was considered a de facto judge, and that he had continuing jurisdiction to hear all matters relating to the case. *Nelson v. State*, 626 So. 2d 121 (Miss. 1993); *Herring v. Herring*, 571 So. 2d 239 (Miss. 1990), *Winn v. Eatherly*, 187 Miss. 159, 192 So. 431 (1939); *Adams v. Mississippi State Bank*, 75 Miss. 701, 23 So. 395 (1897). Conversely, Beatrice argues that Chancellor Grist's authority to hear related matters ended when the final judgment of divorce was entered.

¶9. The Court of Appeals found that although the Chancery Court has continuing jurisdiction in domestic cases, the authority of a special judge ends when the divorce decree becomes final. Therefore, a special judge does not have the authority to hear other related matters even though they may be docketed under the divorce case. The Court of Appeals concluded that Chancellor Grist's authority ended when the divorce decree became final, and therefore, at the time of the contempt hearing, Chancellor Grist was not a *de jure* judge.

¶10. The Court of Appeals also found that Chancellor Grist was not a *de facto* judge and that his official acts of ruling on the contempt matter and custody issues lacked "color of title" and "color of authority." *See* Miss. Code Ann. § 25-1-37 (1991), *Nelson v. State*, 626 So. 2d 121, 124 (Miss. 1993), and *Herring v. Herring*, 571 So. 2d 239, 243 (Miss. 1990). The court explained that, unlike the regular judges in *Nelson* and *Herring*, in the instant case, the regular judges had not recused themselves from the contempt proceedings but only from the original divorce proceedings. Therefore, the only colorable authority that Chancellor Grist might have had was his 1991 appointment, which expired by its own terms and by operation of law.

¶11. A review of the proceedings below indicates that Chancellor Timothy Ervin entered an order appointing Chancellor Grist to hear the original divorce under the authority of the Miss. Code Ann §9-1-

105(5) (1991), which provides in pertinent part that:

> When a judicial officer is unwilling or unable to hear a case or unable or unwilling to hold court for a period of time not to exceed two (2) weeks, the trial judge or judges of the affected district or county and other trial judges may agree among themselves regarding the appointment of a person for such case or such limited period of time.

The trial judges in the area, or at least Chancellor Ervin, felt that this appointment was necessary since Eugene Barton was a practicing attorney in the First Judicial District. The parties and the other chancellors apparently all agreed, sub silentio, that Eugene's active practice before them might have a chilling effect on either his interests or the interests of his many clients. In any event, the parties did not raise this issue prior to the divorce and thus waived any further objections as to the appointment of Chancellor Grist.

¶12. The decree appointing Chancellor Grist reads as follows:

> This Cause came on for hearing before the Chancery Court of Lee County, Mississippi. The Court finds that the Defendant and Counter plaintiff, Robert Eugene Barton, was a member of the bar practicing in the First Judicial District of the State of Mississippi. The Court finds that the Special Judge from outside this Court District should be appointed to hear this case and is of the opinion that the Honorable Don Grist should be appointed as Special Judge for the purposes of this case.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the Hon. Don Grist is hereby appointed Special Judge for the purposes of hearing all motions, hearings, proceedings, and the final trial in the above styled case.

> SO ORDERED, ADJUDGED AND DECREED, this the 22nd day of November, 1991.

¶13. Although we have not specifically addressed the termination of authority of a specially appointed judge, we have stated that judges with color of authority act as *de facto* judges and their rulings are valid. *Crocker v. Sears, Roebuck & Co.*, 346 So. 2d 921 (Miss. 1977). In *Crocker*, the appellant claimed that a county judge of Lauderdale County lacked authority to sit as circuit judge of the Eighth Judicial District and that his judgment was void. Noting that the source of the judge's authority could not be ascertained from the record, we stated that the judge was a *de facto* circuit judge under Miss. Code Ann. §25-1-37 (1991), which provides:

> The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not.

*Crocker* defined a *de facto* officer as "'one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto.'" *Crocker*, 346 So. 2d at 922 (*quoting Adams v. Mississippi State Bank*, 75 Miss. 701, 725, 23 So. 395, 398 (1898); *Raper v. State*, 317 So. 2d 709, 711 (Miss. 1975)). We noted that, "[i]t is well settled in this state that acts of a de facto judge are valid, regardless of whether he was properly appointed or qualified or not . . . ." *Crocker* 346 So. 2d at 922-23 (quoting *Bird v. State*, 154 Miss. 493, 500, 122 So. 539, 540 (1929)). In *Nelson v. State*, 626 So. 2d 121 (Miss. 1993), we addressed whether a special judge had authority to hear a case based on recusal where the trial court failed to give proper notice to this Court

pursuant to Miss. Code Ann. § 9-1-105(5). *Nelson* upheld *Crocker* and *Bird*, *supra*, stating

> one who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts. Any challenge regarding the validity of actor's appointment must be brought against the actor in proceedings contesting the right to office.

*Nelson*, 626 So. 2d at 125. *See also Upchurch v. City of Oxford*, 196 Miss. 339, 17 So. 2d 204 (1944).

¶14. A *de facto* judge can retain his color of authority as long as he has some claim to his position. One such claim of right comes through appointment. We have held that the duration of a special judge's appointment will be determined by the order of appointment. ***See Hall Comm'n Co. v. Crook***, 87 Miss. 445, 40 So. 20, 40 So. 1006 (1906). When a judge is disqualified to hear a case, the special judge appointed will be able to try all the matters in the case. ***Id.*** Where a judge is ill or absent from the state, the order will also determine the length of time the special judge will serve to fulfill his appointment. ***Id.***

¶15. We find Chancellor Grist was without color of authority in the proceedings before this Court. The distinction recognized by the Court of Appeals is valid. Unlike the ***Nelson*** and ***Herring*** cases, the regular judges in the instant case had not recused themselves for the modification and contempt proceedings. Their recusal was only for the divorce proceedings and ended with entry of final judgment of divorce. It is clear from the decree appointing Chancellor Grist that he was to serve only until the divorce was final. Therefore, any colorable authority he possessed by virtue of the 1991 appointment ended with the divorce proceedings and final entry of judgment.

¶16. Chancellor Grist was appointed special judge to hear the divorce matter because one of the parties, a practicing attorney in the district, had cases pending before all three of the judges in that district. We suspect that both Eugene and Beatrice approved of the appointment of the special judge. Beatrice objected, however, to Chancellor Grist's continuing authority over this cause after the original matter became final. It is clear from the record that neither party objected to the appointment of Chancellor Grist as special judge prior to the entry of the final decree.

¶17. While we find his original appointment valid, Chancellor Grist superseded his power after the final divorce decree by presiding over the modification of custody and contempt proceedings. The appointment of a special judge should not last forever. We affirm the decision of the Court of Appeals reversing and remanding this case to the Lee County Chancery Court.

¶18. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.**