# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-IA-01181-SCT

*ROBERT LENOIR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2023 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | THOMAS M. FORTNER |
| | RONALD L. WHITTINGTON |
| | KIMBERLY WOODALL MORRISON |
| | CLINTON C. CARTER |
| | REBECCA PRUETT DENHAM |
| | JAMES LEWIS LANE, JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | RONALD L. WHITTINGTON |
| ATTORNEYS FOR APPELLEE: | EARL LINDSAY CARTER, JR. |
| | JAMES L. LANE, JR. |
| NATURE OF THE CASE: | CIVIL - CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED AND REMANDED - 02/20/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING AND COLEMAN, P.JJ., AND GRIFFIS, J.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Robert Lenoir appeals the circuit court's denial of his motion to disqualify the judge and to quash the indictment. Finding no *reversible* error, we affirm the circuit court's interlocutory order, and we remand this case to the circuit court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. On or about March 29, 2021, Wendy McMahan was found deceased at Lenoir's

residence in Pike County. Lenoir is an attorney who practices law in Pike County. Lenoir's

mother[1] and brother[2] are also attorneys who practice law in Pike County.

¶3.     By order entered April 6, 2021, Pike County Circuit Judges David H. Strong, Jr., and

Michael M. Taylor recused from the case and appointed Senior Status Judge Forrest A.

Johnson to preside over the matter. The order stated as follows:

ORDER APPOINTING SPECIAL JUDGE

This matter having come on before the [c]ourt on the [c]ourt's own Motion, and the court having heard and considered this matter does find as follows:

Neither Judge David H. Strong, Jr. or Judge Michael M. Taylor can hear the above styled matter due to a conflict, therefore pursuant to Miss. Code Ann. § 9-1-105(5), said judges have agreed "Among Themselves" to the appointment of Senior Status Judge Forrest A. Johnson, to hear any matters arising in this cause and Judge Forrest A. Johnson having agreed to accept this appointment.

A copy of this Order shall be immediately furnished to Chief Justice Michael Randolph as notice required by Miss. Code Ann. § 9-1-105(5).

SO ORDERED AND ADJUDGED this the 6th day of April, 2021.

¶4.     It is undisputed that the April 6, 2021 order signed by Judges Strong and Taylor is

included in the record. A *filed-stamped copy* of the order, however, is not. Instead, a filed-

stamped copy of the April 6, 2021 order was attached as an exhibit to the State's appellate

brief, and it indicates that the April 6, 2021 order was filed with the Pike County Circuit

---

[1] Lenoir's mother is Dee Shandy.

[2] Lenoir's brother is Tyler Shandy.

2

Clerk's Office on April 7, 2021.[3]

¶5.   More than one year later on June 7, 2022, Judge Johnson entered an order appointing

E. Lin Carter, District Attorney for the Twelfth Circuit Court District, as special prosecutor.

The order stated as follows:

<u>ORDER APPOINTING SPECIAL PROSECUTOR</u>

THIS DAY there came on for consideration on the *ore tenus* motion of the State of Mississippi to appoint a Special Prosecutor in Mississippi Bureau of Investigation Case #B21-00000287, and the [c]ourt, being fully advised in the premises, FINDS that said motion is well-taken and should be granted.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Lin Carter, District Attorney for the 12th Judicial District, or any Assistant District Attorney on his staff, are hereby appointed as Special Prosecutor in the above referenced Mississippi Bureau of Investigation Case #B2l-00000287 to appear on behalf of the State of Mississippi in all criminal proceedings in the prosecution of the above referenced case and to fully prosecute the same as provided by law.

SO ORDERED AND ADJUDGED on this the 7th day of June, 2022.

¶6.   On June 9, 2022, Lenoir was indicted by the Pike County Grand Jury on seven counts:

Count I—first degree murder, Count II—possession of methamphetamine, Count

III—tampering with physical evidence, Count IV—possession of methamphetamine, Count

V—child endangerment, Count VI—felony child abuse, and Count VII—tampering with a

witness.  The indictment was signed by the grand jury foreperson and an assistant district

---

[3] Because Lenoir had not yet been indicted, the April 6, 2021 order was not filed in the case file.  Instead, the order was assigned a miscellaneous cause number and filed in an administrative file.

attorney for the Twelfth Circuit Court District.

¶7. After Lenoir was formally indicted, Judges Strong and Taylor entered a second order of recusal and appointment of special judge on June 29, 2022. The June 2022 order is substantially identical to the April 2021 order.

¶8. In July 2022, Lenoir's defense counsel entered an appearance, and Lenoir entered a waiver of arraignment and a plea of not guilty. Then, on August 18, 2022, Lenoir filed a motion to change venue. In his motion, Lenoir noted that both circuit judges in Pike County had recused, along with the Pike County District Attorney's Office. Judge Johnson granted the motion on August 31, 2023, and he transferred venue from Pike County to Adams County and set a trial date for November 13, 2023.

¶9. On September 11, 2023, more than two years after Judge Johnson was appointed, more than one year after Lenoir was indicted, approximately two weeks after Lenoir's motion to change venue was granted, and approximately two months before trial, Lenoir filed a motion to disqualify the judge and to quash the indictment. In his motion, Lenoir argued that Judge Johnson's appointment was a nullity because (1) "[n]otwithstanding [Judges Strong and Taylor's] recusal, they undertook to appoint a special circuit judge by mutual agreement," and (2) there is no evidence that the statute under which Judge Johnson was appointed was followed. Lenoir further argued that Judge Johnson's appointment of a special prosecutor "was done without authority" because the "appointment raise[d] the implication that the District Attorney pro tempore appeared before the Pike County Grand

4

Jury . . . before the purported appointment." Lenoir asked that Judge Johnson be disqualified and that his indictment be quashed "and held for naught."

¶10. After a hearing, Judge Johnson denied the motion. Lenoir petitioned for an interlocutory appeal, which we granted. On appeal, Lenoir argues that Judge Johnson's appointment is a legal nullity and that because Judge Johnson was not properly appointed, Judge Johnson's appointment of a special prosecutor is void. Lenoir claims that Judge Johnson should be disqualified and that the indictment against him should be quashed.

## STANDARD OF REVIEW

¶11. Lenoir asserts, and the State does not dispute, that "[a]ll issues raised in this appeal are questions of law[.]" "This Court reviews 'questions of law de novo.'" *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668, 673 (Miss. 2020) (quoting *Campbell Props., Inc. v. Cook*, 258 So. 3d 273, 275 (Miss. 2018)).

## DISCUSSION

*April 6, 2021 Order—Recusal of Circuit Judges and Appointment of Judge Johnson*

¶12. Lenoir contends that "[t]he April 6, 2021 [o]rder entered by Judges Taylor and Strong is a nullity." Lenoir claims that the order is void "as [Judges Taylor and Strong] were without power to appoint their own [s]pecial [c]ircuit [j]udge" and that "by virtue of the void order, . . . the same [s]pecial [c]ircuit [j]udge cannot now continue to adjudicate the merits of the case[.]"

¶13. Judges Taylor and Strong entered the April 6, 2021 order "pursuant to [Mississippi

Code Section] 9-1-105(5)." Section 9-1-105(5) provides:

> *When a judicial officer is unwilling or unable to hear a case* or unable or unwilling to hold court for a period of time not to exceed two (2) weeks, *the trial judge or judges of the affected district or county and other trial judges may agree among themselves regarding the appointment of a person for such case* or such limited period of time. The trial judges shall submit a notice to the Chief Justice of the Supreme Court informing him of their appointment. If the Chief Justice does not appoint another person to serve as special judge within seven (7) days after receipt of such notice, the person designated in such order shall be deemed appointed.

Miss. Code Ann. § 9-1-105(5) (Rev. 2019) (emphasis added).

> A. *Whether Judge Johnson's appointment in the April 6, 2021 order is ineffective due to a lack of judicial authority.*

¶14. Lenoir first argues, "[o]nce a judge recuses, he or she can take no further action in the case from which he or she has recused. A purported appointment in a recusal order is therefore ineffective." We disagree.

¶15. In ***Nelson v. State***, the Court considered among other issues "the manner in which a substitute judge was appointed" under Section 9-1-105(5). ***Nelson v. State***, 626 So. 2d 121, 122 (Miss. 1993). There, Nelson pled guilty to two charges of simple robbery. *Id.* at 123. Judge John Montgomery presided over the plea and sentenced Nelson to ten years on each charge, with the sentences to run consecutively. *Id.*

¶16. Nelson later filed a motion to vacate his conviction and sentence and sought an evidentiary hearing on his motion. *Id.* at 124. The motion was denied by Judge Robert Evans on May 10, 1991. *Id.* "Evans was appointed to hear the case following an order of

6

recusal signed by Judge Lee J. Howard, wherein Howard recused himself and Montgomery as both judges had been members of the Oktibbeha County District Attorney's Office at the time that the indictments were rendered." *Id.* The recusal order "was also entered on May 10, 1991." *Id.*

¶17. Nelson moved to vacate Judge Evans's denial of his motion to vacate conviction and sentence, asserting Judge Evans was not properly appointed. *Id.* Judge Evans found his appointment was proper under Section 9-1-105(5) and denied the motion. *Id.* Nelson appealed. *Id.*

¶18. On appeal, the Court recognized that under Section 9-1-105(5), "the trial judges of an affected district may agree with a trial judge of a different district that the latter judge will handle the matter." *Id.* at 124 (citing § 9-1-105(5)). The Court noted, however, that "[t]he participation of the recused person in the selection of a replacement may itself raise questions of impropriety." *Id.* at 125. The Court stated, "[w]hile [Section] 9-1-105(5) may be read to authorize the procedure here attempted . . . , the provisions of [Section] 9-1-105(1) *should* be used in all instances where there is a recusal and the entry of the appointing order requires the participation of a judge who is recused." *Id.* (emphasis added). Thus, the Court acknowledged that Section 9-1-105(5) authorized the appointment of the special judge, but the Court recommended that trial judges "should" follow Section 9-1-105(1) "where there is a recusal and the entry of the appointing order requires the participation of a judge who is recused." *Id.*

7

¶19.   Five years later, in **Barton v. Barton**, the Court found a special chancellor's appointment under Section 9-1-105(5) was valid.  **Barton v. Barton**, 726 So. 2d 163, 167 (Miss. 1998).  There, "Chancellor Timothy Ervin entered an order appointing Chancellor [Don] Grist to hear the original divorce under the authority of [Section] 9-1-105(5)[.]" *Id.* at 165.  "The trial judges in the area . . . felt that this appointment was necessary since Eugene Barton was a practicing attorney in the [district]" and "had cases pending before all three of the judges in that district."  *Id.* at 165, 166.

¶20.   On appeal, Beatrice Barton argued Chancellor Grist "was without authority to hear both the contempt and the custody matter" since "Chancellor Grist's authority to hear related matters ended when the final judgment of divorce was entered." *Id.* at 165.  The Court agreed and found "Chancellor Grist superseded his power after the final divorce decree by presiding over the modification of custody and contempt proceedings."  *Id.* at 167. Importantly, however, the Court found Chancellor Grist's "original appointment [under Section 9-1-105(5)] [was] valid." *Id.*

¶21.   In support of his argument, Lenoir relies on **Banana v. State**, 638 So. 2d 1329 (Miss. 1994).  Lenoir asserts that "[t]he reversal [in **Banana**] was based on the failure to comply with the proper procedure for appointment of a special judge."  But Lenoir's assertion is misplaced.

¶22.   In **Banana**, the Court noted that "as in **Nelson**, Judge Montgomery participated in selecting his replacement and did not follow the mandates of Section 9-1-105(1)." **Banana**,

8

638 So. 2d at 1331. The Court, once again, "explained that 'the provisions of [Section] 9-1-105(1) *should* be used in *all* instances where there is a recusal and the entry of the appointing order requires the participation of a judge who is recused.'" *Id.* (emphasis added) (quoting *Nelson*, 626 So. 2d at 125). But, despite Lenoir's assertion, the Court did not reverse "based on the [circuit court's] failure to comply with the proper procedure for appointment of a special judge." Instead, the Court reversed the case because (1) Judge Montgomery was disqualified from ruling on Banana's post-conviction motion since he was the district attorney at the time the case was filed, and (2) "[a]fter Banana filed his appeal from Judge Montgomery's initial ruling, the trial court lacked jurisdiction to appoint Judge Coleman as the replacement judge to rule on Banana's motion for post conviction relief." *Id.* The Court concluded: "[Judge Montgomery] attempted to recuse himself after the ruling had been appealed. Because the [trial] court lacked jurisdiction for the latter action and because [Judge Montgomery] should have recused himself initially, we vacate the order of the circuit court and remand this matter for further proceedings." *Id.* at 1330.

¶23. Here, Judge Johnson was appointed under Section 9-1-105(5). This Court continues to caution and discourage trial judges regarding the use of this subsection in situations such as this one "where there is a recusal and the entry of the appointing order requires the participation of a judge who is recused." *Nelson*, 626 So. 2d at 125. Indeed, as previously noted, "[t]he participation of the recused person in the selection of a replacement may itself raise questions of impropriety." *Id.* "It is to be avoided in cases such as the instant one

where, objectively viewed, there is an appearance of partiality." *Id.* (citing *Jenkins v. State*, 570 So. 2d 1191, 1193 (Miss. 1990); *Ferry v. State*, 267 S.E.2d 1, 2 (Ga. 1980)).

¶24. The Court acknowledges, however, that Section 9-1-105(5) remains a lawful statute enacted by our Legislature. And Section 9-1-105(5) authorizes the procedure in which Judge Johnson was appointed. § 9-1-105(5). As a result, despite Lenoir's assertion to the contrary, Judge Johnson's appointment in the April 6, 2021 order is not ineffective.

> B. *Whether Judge Johnson's appointment in the April 6, 2021 order is defective due to a lack of notice.*

¶25. Lenoir further argues that the "file reflects nothing that confirms compliance with the [notice] provisions of [Section] 9-1-105(5)." He claims that "[a]bsent that notice, the attempted appointment of Judge Johnson, already flawed by the [c]ourt's recusal, is fatally defective[.]" In support, Lenoir relies on *Nelson*.

¶26. In *Nelson*, the Court found that "no notice was given to the Chief Justice" as required under Section 9-1-105(5). *Nelson*, 626 So. 2d at 124. The Court noted that "the appointed judge entered a dispositive order on the same day that the order appointing him was filed[.]" *Id.* Nelson argued "that this defect [wa]s fatal to the attempted appointment and that Judge Evans therefore had no power to act." *Id.* The Court disagreed, however, and found that both civil and criminal "authorities make it clear that one who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts." *Id.* at 125 (citing *Crocker v. Sears, Roebuck & Co.*, 346 So. 2d 921 (Miss. 1977); *Upchurch v. City of*

10

*Oxford*, 196 Miss. 339, 17 So. 2d 204 (1944); ***Bird v. State***, 154 Miss. 493, 122 So. 539 (1929); Miss. Code Ann. § 25-1-37 (1972)). The Court held that "[t]hese precedents compel the conclusion that Nelson's prayer for reversal based upon the failure to comply with the statute regarding the appointment of Judge Evans must fail." ***Id.***

¶27. Here, the April 6, 2021 order appointing Judge Johnson specifically ordered that "[a] copy of this [o]rder shall be immediately furnished to Chief Justice Michael Randolph as notice required by Miss. Code Ann. § 9-1-105(5)." Thus, unlike in ***Nelson***, notice was provided here as required under Section 91-1-105(5).[4] And unlike in ***Nelson***, Judge Johnson did not enter any orders "on the same day that the order appointing him was filed[.]" ***Id.*** at 124. Instead, no action was taken, and "the Chief Justice d[id] not appoint another person to serve as special judge within seven (7) days after receipt of such notice[.]" § 9-1-105(5). As a result, under Section 9-1-105(5), Judge Johnson "shall be deemed appointed." *Id.*

¶28. But even if notice was not given, as Lenoir suggests, Judge Johnson "act[ed] pursuant to the color of authority." ***Nelson***, 626 So. 2d at 125 (citing ***Crocker***, 346 So. 2d 921; ***Upchurch***, 17 So. 2d 204; ***Bird***, 122 So. 539; § 25-1-37). Indeed, Judge Johnson was appointed under Section 9-1-105(5) "to hear any matters arising in this cause." As a result, "[Lenoir]'s prayer for reversal based upon the failure to comply with the statute regarding

---

[4] Lenoir asserts there is no "evidence of the [April 6, 2021] [o]rder being *served* on the Chief Justice of the Mississippi Supreme Court[.]" (Emphasis added.) But Section 9-1-105(5) does not require service upon the Chief Justice; it only requires that notice be "submit[ted]." § 9-1-105(5).

the appointment of Judge [Johnson] must fail." ***Id.***

C.     *Whether the filed-stamped copy of the April 6, 2021 order should be disregarded by the Court because it was not included in the appellate record.*

¶29. Lenoir last argues that this Court should not consider the filed-stamped copy of the April 6, 2021 order because "[i]t is not a part of the record on appeal." We agree.

¶30. As the record reflects, a filed-stamped copy of the April 6, 2021 order was not previously disclosed. In other words, a filed-stamped copy of the order was neither disclosed before nor during the circuit court's hearing on Lenoir's motion to disqualify the judge and to quash the indictment. Instead, a filed-stamped copy of the April 6, 2021 order was attached to the State's brief on appeal.[5]

¶31. The filed-stamped copy of the order is *identical* to the order included in the record, and it confirms that the April 6, 2021 order was filed by the circuit clerk on April 7. Thus, while a filed-stamped copy of the order was not previously disclosed, the information or substance in the order was previously disclosed and known to Lenoir.

¶32. Nevertheless, "Mississippi appellate courts may not consider information that is outside the record." ***Hardy v. Brock***, 826 So. 2d 71, 76 (Miss. 2002) (citing ***Dew v. Langford***, 666 So. 2d 739, 746 (Miss. 1995)); *see also* ***Shumake v. Shumake***, 147 So. 3d

---

[5] Although the reason is unknown, it is likely that a filed-stamped copy of the April 6, 2021 order was inadvertently undisclosed since the order was filed in a miscellaneous file. There is no evidence that the State purposefully withheld the filed-stamped order or somehow prevented Lenoir from obtaining it.

352, 354 n.1 (Miss. 2014) ("Although the November 2010 order is not part of the record in today's case, Leslie attached a copy of the order as an exhibit to his appellate brief. . . . Because this Court will not consider information outside of the record, the contents of this order will not be considered in today's appeal."). Accordingly, we will not consider that the April 6, 2021 order, which is included in the record, was filed April 7.[6]

¶33.    But even without record evidence that the April 6, 2021 order was filed, Lenoir's argument regarding Judge Johnson's appointment fails since Judges Strong and Taylor "act[ed] pursuant to the color of authority." *Nelson*, 626 So. 2d at 125 (citing *Crocker*, 346 So. 2d 921; *Upchurch*, 17 So. 2d 204; *Bird*, 122 So. 539; Miss. Code Ann. § 25-1-37). Indeed, Judges Strong and Taylor effectively recused themselves "due to a conflict" and appointed Judge Johnson under Section 9-1-105(5) "to hear any matters arising in this case[.]" And as previously discussed, Section 9-1-105(5) authorized Judge Johnson's appointment. Thus, even though we are unable to consider that the April 6, 2021 order was filed, the actions taken therein remain valid. *See id.* ("[O]ne who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts." (citing

---

[6] Lenoir filed a motion to strike asking this Court to strike the filed-stamped copy of the April 6, 2021 order as well as the October 10, 2024 letter correspondence from Pike County District Attorney W. Brendon Adams. The motion appears as an open motion on the Court's docket. The motion is granted. As previously stated, we will not consider that the April 6, 2021 order was filed on April 7. The October 7, 2024 letter, which was filed by the Supreme Court Clerk on October 10, 2024, was not addressed to the Court but was instead directed to the Supreme Court Clerk. Because the letter was not addressed to the Court and did not seek relief from the Court, it was not considered by the Court.

*Crocker*, 346 So. 2d 921; *Upchurch*, 17 So. 2d 204; *Bird*, 122 So. 539; § 25-1-37)).

*June 7, 2022 Order—Appointment of Special Prosecutor*

¶34.    Lenoir asserts that on June 7, 2022, when Judge Johnson appointed Lin Carter as special prosecutor, "nothing was pending in the Circuit Court of Pike County, Mississippi charging [him] with any offense." He argues that as a result, "[n]o jurisdiction had attached in the Circuit Court of Pike County on that date."

¶35.    Lenoir fails to provide any authority in support of this argument. Mississippi Rule of Appellate Procedure 28(a)(7) requires that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." Miss. R. App. P. 28(a)(7). "This Court has repeatedly said that we are under no obligation to consider assignments of error when no authority is cited." *Kelly v. State*, 553 So. 2d 517, 521 (Miss. 1989) (citing *Brown v. State*, 534 So. 2d 1019, 1023 (Miss. 1988)). Because Lenoir fails to provide any legal authority on this issue, we are not required to address it.

¶36.    Lenoir next argues that the appointment of Lin Carter as special prosecutor "was done without authority" because the record "raises the implication that the District Attorney pro tempore appeared before the Pike County Grand Jury . . . before the purported appointment." Lenoir claims that "such action would be violative of our statutes identifying those officials who can appear before a grand jury" and that "[t]he indictment should therefore be quashed."

¶37.    In support of his argument, Lenoir refers to Mississippi Code Sections "25-31-11 and

14

13-7-1 *et seq.*" But while Lenoir references these statutes, he fails to discuss either statute. Moreover, he fails to explain which section or subsection of each statute was allegedly violated and how each statute was allegedly violated. And although Lenoir references **Hood v. State**, 523 So. 2d 302 (Miss. 1988), that case does not mention or address the statutes Lenoir alleges were violated. Because Lenoir fails to explain or provide sufficient information, other than simply listing the statutes he believes were violated, we are not obligated to address his argument that the State's "action [was] violative of our statutes[.]" *See* **Kelly**, 553 So. 2d at 521 (citing **Brown**, 534 So. 2d at 1023).

¶38. We do, however, address Lenoir's argument that the special prosecutor "appeared before the Pike County Grand Jury . . . before the purported appointment." "[A]ny citizen having a complaint against him is entitled to have a grand jury investigate the complaint when no one else is present other than the grand jurors, the sworn witnesses who are being examined, and the *duly authorized prosecuting officer*. This is fundamental." **Hood**, 523 So. 2d at 303 (emphasis added).

¶39. The State asserts that based on "matters of conflict," the Pike County District Attorney's Office hand delivered Lenoir's criminal file to the Forrest County District Attorney's Office on December 8, 2021, and that the Forrest County District Attorney's Office "assumed prosecution of the instance case" at that time. The State further asserts that the Forrest County District Attorney's Office presented the case to the Pike County Grand Jury on or about June 2, 2022. Thus, the State admits that this case was presented to the

15

grand jury *before* the order appointing special prosecutor was entered. As a result, at the time the Forrest County District Attorney's Office presented the case to the Pike County Grand Jury, it was not yet an "authorized prosecuting officer." *Id.* at 303. Nevertheless, this alone does not warrant a dismissal of the indictment.

¶40. "[T]he rule against unauthorized persons in the grand jury room is to prevent improper influence." *Id.* at 312 (Robertson, J., concurring in part, dissenting in part). Lenoir fails to argue or present any evidence of improper influence by the special prosecutor. Lenoir does not assert that the Forrest County District Attorney's Office exercised improper influence over the Pike County Grand Jury. In fact, *Lenoir takes no issue with the presentation at all*. Instead, the *only* issue Lenoir raises regarding the appointment of the special prosecutor is timing, i.e., that the case was presented to the grand jury five days before the special prosecutor was formally appointed by order.

¶41. While it certainly would have been best for the special prosecutor to have waited to present the case to the grand jury after the order appointing the special prosecutor was entered, Lenoir fails to show how he was prejudiced by the special prosecutor's presentation of the case to the grand jury. The special prosecutor was formally appointed by order entered June 7, 2022. The indictment in this case was handed down June 9, 2022, *after* the special prosecutor was appointed. And an assistant district attorney on behalf of the special prosecutor signed the indictment.

¶42. We find that although the special prosecutor had not been formally appointed by the

16

circuit court and was therefore not a "duly authorized prosecuting officer" at the time the case was presented to the grand jury, this alone does not warrant a dismissal of the indictment since there is no evidence of improper influence. *Hood*, 523 So. 2d at 303, 312.

*Judge Strong's Alleged Post-Recusal Actions*

¶43. Lenoir asserts that despite the April 6, 2021 recusal order, Judge Strong "undertook to receive the indictment returned in this cause." Lenoir argues, "Judge Strong's post-recusal actions can have no legal effect and are void."

¶44. But Judge Strong did not receive the indictment returned in this cause. Instead, Judge Strong, a Pike County circuit court judge, signed the Pike County Grand Jury report. The report did not reference or mention Lenoir. Instead, the report simply noted that the Pike County Grand Jury had completed its work, having "presented to the Court FIFTY (50) TRUE BILLS OF INDICTMENT which were *received by the Clerk* and filed by the Clerk . . . ." (Emphasis added.)

¶45. In the April 6, 2021 order, Judge Strong recused from "hear[ing] any matters arising in this cause." Judge Strong's signature on the grand jury report does not equate to "hearing any matters arising in this cause." Thus, Lenoir's assertion regarding Judge Strong's alleged post-recusal actions related to the grand jury report fails.

*Search Warrants*

¶46. Lenoir asserts that because Judge Johnson issued search warrants in this case, he cannot now preside over the case. But as the record and transcript reflect, Lenoir failed to

17

raise this issue in the circuit court.

¶47.    "[W]e do not consider arguments raised for the first time on appeal." ***Bay Point***

***Props., Inc. v. Miss. Transp. Comm'n***, 201 So. 3d 1046, 1055 (Miss. 2016). "We do not

hold trial courts in error on issues not presented to them for consideration." ***Id.*** Because

Lenoir's argument regarding search warrants is made for the first time on appeal, it is

procedurally barred. ***Id.***; *see also* ***Johnson v. State***, 247 So. 3d 300, 302 (Miss. Ct. App.

2017) ("[S]ince these arguments are made for the first time on appeal, they are procedurally

barred." (citing ***Gardner v. State***, 531 So. 2d 805, 808-09 (Miss. 1988))).[7]

¶48.    Notwithstanding the procedural bar, Lenoir's argument is premature and fails at this

time.

¶49.    In support, Lenoir relies on ***Brent v. State***, 929 So. 2d 952 (Miss. Ct. App. 2005). In

***Brent***, Brent was indicted and later convicted of cocaine possession. ***Id.*** at 954. Circuit

Court Judge Bobby DeLaugher sentenced Brent as a habitual offender to serve life without

the possibility of parole. ***Id.***

> Prior to his selection as a Hinds County Circuit Court Judge, Judge
> Delaughter served as Hinds County Court Judge. While in his capacity as
> county court judge, Judge DeLaughter issued the search warrant that [led] to
> Brent's arrest, and ultimately to the subsequent indictment that brought Brent
> before Judge DeLaughter in his current capacity as circuit court judge. An
> attack on the validity of the warrant signed by Judge DeLaughter became a
> major element of Brent's defense. Also of import is the fact that Judge

---

[7] Because this case is on interlocutory appeal, "the procedural bar for purposes of consideration on appeal is not a prohibition upon the parties to litigate this issue." ***Anglin v. Gulf Guar. Life Ins. Co.***, 956 So. 2d 853, 864 (Miss. 2007).

18

Delaughter once served the State of Mississippi with distinction as a Hinds County Assistant District Attorney, and prosecuted Brent on a charge of aggravated assault, an offense which was used to charge Brent as a habitual offender. At trial, Judge DeLaughter stated in the record that [he] had no personal bias or prejudice, remembered no facts concerning the proceedings, and could not even remember Brent from prior encounters.

*Id.* at 955. As a result, Judge DeLaughter denied Brent's motion to recuse. *Id.* at 954.

¶50. On appeal, Brent argued "that Judge DeLaughter committed reversible error by denying Brent's motion for DeLaughter's recusal." *Id.* The Court of Appeals agreed and reversed and remanded the case for a new trial with a new judge. *Id.* at 955. The court explained:

In the case before us, Judge DeLaughter, in his capacity as trial court judge, was essentially asked to review whether Judge DeLaughter, in his former capacity as county court judge, had a substantial basis for concluding that there was a fair probability that contraband or evidence of crime would be found on the premises to be searched. *Here, the issuing and reviewing judges are one and the same.* The problem created by this scenario is patently obvious. Not only might a reasonable person harbor doubts about the impartiality of the judge in this situation, we find that any reasonable person should have such doubts. The trial judge committed manifest error in failing to recuse himself, despite his subjective pronunciations that he held no bias against Brent. According to the objective "reasonable person" test established by Mississippi precedent, we must reverse this case and remand it for trial with a new judge.

*Id.* (emphasis added).

¶51. Here, Lenoir asserts and the State agrees that Judge Johnson issued search warrants in this case. But as the record reflects, there have been no issues regarding those search warrants. In other words, unlike Judge DeLaughter in *Brent*, Judge Johnson has not been asked to review a search warrant he issued. *See id.* (Judge Johnson has not been "asked to

19

review whether [he] . . . had a substantial basis for concluding that there was a fair probability that contraband or evidence of crime would be found on the premises to be searched."). Thus, unlike in **Brent**, we do not have the problematic scenario in which "the issuing and reviewing judges are one and the same." *Id.*

¶52. Moreover, the record reflects that unlike in **Brent**, Lenoir did not file a motion for Judge Johnson to recuse. While Lenoir moved to have Judge Johnson disqualified, that motion did not seek Judge Johnson's recusal due to the issuance of search warrants. Instead, in his motion to disqualify, Lenoir asserted that Judge Johnson "should disqualify himself from this case" because "he was not properly appointed."

¶53. We agree with the State that, at this time, Lenoir's argument regarding Judge Johnson's issuance of search warrants is premature. Should an issue arise regarding the search warrants issued by Judge Johnson, then the matter can and should be addressed by the circuit court at that time.

## CONCLUSION

¶54. Lenoir's motion to disqualify the judge and to quash the indictment was properly denied. We affirm the circuit court's interlocutory order, and we remand this case to the circuit court for further proceedings.

¶55. **AFFIRMED AND REMANDED.**

**KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE AND BRANNING, JJ., CONCUR. RANDOLPH, C.J., AND SULLIVAN, J., NOT PARTICIPATING.**

20